# YELLOW CAB COMPANY OF NASHVILLE, INC. et al. v. R. CLYDE PEWITT. —316 S. W. (2d) 17.

Middle Section, Nashville. May 16, 1958.

Certiorari denied by Supreme Court September 1, 1958.

574

See also 316 S. W. (2d) 15.

Manier, Crouch & White, Nashville, for Yellow Cab Co., K. Harlan Dodson, Jr., Nashville, for Greyhound Corp.

Howard, Davis, Boult & Hunt and Lindsey Davis, Nashville, and King & Fuston, Chattanooga, for R. Clyde Pewitt.

FELTS, J. This was an action for Pewitt against the Yellow Cab Company and the Greyhound Corporation for damages for injuries to his person and to his automobile sustained from being struck by a cab of the former and a bus of the latter at the intersection of the Murfreesboro Road and the Elm Hill Pike in Nashville.

He was driving his car east on the Murfreesboro Road, intending to turn off to his left across its westbound traffic lanes into the Elm Hill Pike. He signaled a left turn, cut his front wheels to the left, stopped his car at the center line, and was standing there signaling a left turn, waiting for westbound traffic to pass, when a cab of defendant Cab Company ran into the rear of his car and knocked it across the center line into the westbound traffic lanes, where it was struck by a westbound bus of defendant Greyhound Corporation.

The negligence charged was that the cab driver and the bus driver were each driving at an excessive, reckless,

and dangerous rate of speed, not keeping a proper lookout ahead, did not have the vehicle under control, but struck plaintiff's car under the circumstances above stated; and that defendants were thus guilty of joint and concurrent negligence causing the harm sued for. Each of them pleaded not guilty.

The case has been tried twice. On the first trial the jury rendered a verdict for plaintiff against the Cab Company for $125,000 for personal injuries and $950 for property damage, and a verdict in favor of the Greyhound Corporation. Upon the Cab Company's motion, the Trial Judge granted it a new trial, but let the verdict stand and dismissed the case as to the Greyhound Corporation. To this latter action of the court the Cab Company saved a wayside bill of exceptions.

On the second trial there was a verdict for plaintiff against the Cab Company for $70,000 for personal injuries and $1,025 for property damage. The Cab Company moved for a new trial upon grounds of excessiveness of the verdict. The Trial Judge suggested a remittitur of $10,000 which plaintiff accepted, and the judge overruled the Company's motion for a new trial and entered judgment for plaintiff against the Company for $60,000 for personal injuries and $1,025 for property damage.

From this final judgment against it the Cab Company brought the case to this Court by an appeal in the nature of a writ of error, and has assigned errors on the first trial upon the wayside bill of exceptions and errors on the second trial upon the amount of the verdict and judgment.

■ In such a case, where there are bills of exceptions saved upon successive trials of a case below, the established practice in the appellate court is to have, not a separate hearing on each trial, but one hearing upon the whole record of the case and to determine it by considering each trial separately and in the order in which it occurred. Town of Dickson v. Stephens, 20 Tenn. App. 196, 96 S. W. (2d) 201; Gilreath's Caruther's History of a Lawsuit (7th Ed.) p. 480.

■ Upon the first trial the Cab Company has assigned two errors, one upon an instruction given by the judge in his charge to the jury, and the other upon his overruling its motion to set aside the verdict not only as to it but also as to its co-defendant, the Greyhound Corporation, and to grant a new trial as to both of them. The instruction complained of was as follows:

"The plaintiff, Pewitt, further contends that the defendant, Yellow Cab Company, is guilty of negligence in that it violated a certain state statute and that such violation was the direct and proximate cause of his alleged injuries. Now, the statute relied upon by the plaintiff, Mr. Pewitt, is Section 2682 [2687] of the Code of Tennessee, Subsection (b) as follows:

" 'The driver of a vehicle approaching but not having entered at an intersection shall yield the right-of-way to a vehicle within such intersection in turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning to the left, has given a plainly visible signal of his intention to turn.' "

It is urged that this statute could not here apply to the cab but only to the bus, since the bus was the approaching vehicle whose line of travel would be crossed by plaintiff's car turning left; and that this instruction was error against the Cab Company and in favor of its co-defendant, Greyhound Corporation, for which the Trial Judge should have set aside the verdict and granted a new trial as to both of them.

■ From the charge it appears that the paragraph here complained of was between two others in which the judge explained plaintiff's theory as to the Greyhound Corporation; and he doubtless intended this paragraph to be a part of such explanantion, but by inadvertence used the name "Yellow Cab Company" instead of that of "Greyhound Corporation". In such case, it was counsel's duty to call the inadvertence to the judge's attention and ask him to correct it. Wolfe v. Vaughn, 177 Tenn. 678, 687, 152 S. W. (2d) 631; Elkin Motor Co. v. Ragland, 6 Tenn. App. 166, 174.

■ Assuming, however, that this instruction was positive and harmful error against defendant Yellow Cab Company, we think all the harm to it was removed when the Trial Judge set aside the verdict as to it and granted it a new trial; and that it has no interest or right to complain of his action in approving the verdict and dismissing the case as to its co-defendant, Greyhound Corporation.

■■ Defendants were charged with concurrent negligence causing plaintiff's injuries. As joint tort-feasors, each was jointly and severally liable for all the damages.

Plaintiff could sue either alone, or both together or separately; and it was no concern of one whether the other was sued or not. The applicable principle is stated thus:

" 'If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury.' 1 Thomp., Neg., sec. 75." Justice Caldwell in Coleman v. Bennett, 111 Tenn. 705, 712, 69 S. W. 734, 735.

This principle was applied in the recent case of Howard v. Haven, 198 Tenn. 572, 281 S. W. (2d) 480, where some, but not all, of the wrongdoers were sued, and where on the trial the suit was dismissed as to all except one (a labor union) which was held for all the damages. Responding to objections on this account, Chief Justice Neil, for the Court, said:

"It is not material that Williams was not sued as a joint wrongdoer, as well as other members of the Union; nor is it important that the jury should find against one defendant and in favor of another, since all joint wrongdoers are liable jointly and severally for all damages. Nor can the one against whom the judgment is rendered escape liability on the ground that others were acquitted" (198 Tenn. 580, 281 S. W. (2d) 483).

Likewise, in McAmis v. Carlisle, 42 Tenn. App. 195, 300 S. W. (2d) 59, McAmis sued defendants as joint tortfeasors. The Trial Judge dismissed the action as to one of them and the other was adjudged liable for all the

damages. It was held that the judgment defendant could not complain as to the dismissal of its co-defendant, Donald P. Rohan, d/b/a Yorktown Insulation Company, Judge Howard, for the Court, said:

"Nor do we find any merit in the defendant's contention that the trial judge committed error in dismissing the case against the defendant Donald P. Rohan, d/b/a Yorktown Insulation Company, because (1) the complaining defendant was not aggrieved thereby, and (2) the dismissal neither added to nor lessened its liability to the plaintiff" (300 S. W. (2d) 66).

So, in the case before us, defendant Cab Company cannot complain of the dismissal of its co-defendant, since it was not aggrieved nor its liability affected thereby. This is true whether it was one of the joint tortfeavors, as charged, or was the sole wrongdoer, as implied by the jury's verdict acquitting its co-defendant.

Defendant Yellow Cab Company, however, contends that it has the right to complain of a plain error in the charge by which its co-defendant was discharged in this action; and that it is given this right by our third-party statute (T.C.A. sec. 20-120), construed with our statute (T. C. A. sec. 27-310) providing that any party to a judgment may appeal therefrom, the judgment remaining in full force against such parties as do not appeal.

This third-party statute was enacted in 1955 (ch. 145, Acts of 1955) and, while in force at the time this action was brought, it has since been repealed (ch. 33, Acts of 1957). As it then stood, it provided:

"Whenever any person sued in a court of law on any cause of action cognizable therein shall deem that some other person, not a party to such suit, is primarily liable to the plaintiff, such person so made a defendant may file a cross-action against such other party, in which case the procedure shall be the same as though such cross-action had been filed against the original plaintiff; provided, however, that the filing of such cross-action shall not operate to delay the right of the original plaintiff to proceed against the original defendant when the cause shall be at issue as to such original defendant."

This says a defendant in an action at law, when he deems some other person "primarily liable to the plaintiff", may file a cross-action against such person, and the procedure shall be the same as if the cross-action had been filed against the plaintiff, though it shall not delay his right to proceed in his suit against defendant.

Whatever this may have meant, it seems to have been merely procedural. It does not appear to have created any new cause of action, or given the defendant any new substantive right. Nor does it appear to have changed the rule of joint and several liability of joint tort-feasors, or the rule of no contribution between them. So, we think this statute did not give defendant Cab Company any right to complain of the dismissal of its co-defendant.

This brings us to the Cab Company's assignments of error on the second trial upon the amount of the verdict. It insists that the verdict is excessive and so excessive as to indicate passion, prejudice and caprice on the part

of the jury; and that the judgment, as reduced by remittitur, is still so excessive that a new trial ought to be granted or the judgment further reduced by remittitur here.

Plaintiff was 41 years of age, living with his wife and three children in Nashville, able-bodied and in good health. He had no education or training for office or clerical work, but was a mechanic and had been continuously employed by Super Service Freight Lines for six and one-half years, and his regular wages were $103 per week. He was alone in his car on his way to work when the accident happened on the morning of November 11, 1954.

As above stated, he was driving east on the Murfreesboro Road, going to turn off to his left across its westbound traffic lanes into the Elm Hill Pike. He had reached this intersection, stopped at the center line, was standing there signaling a left turn, waiting for westbound traffic to pass, when defendant's cab struck the rear of his car with great force and knocked it across the center line into the westbound traffic lanes where it was struck by the other defendant's bus.

His car was demolished and he was seriously and permanently injured. He was taken from the scene in an ambulance to the hospital, and his surgeon and physician, Dr. Frank Fessey, saw him in the emergency room. He had a large open wound on his face and forehead, extending from the base of his nose to his hairline. He was bleeding profusely, had lost a lot of blood, was unconscious, in a state of shock, his heart action depressed, and his circulation bad. His skull was exposed in the wound.

He had to be treated for shock before he could be examined. In addition to the wound on his head, he had suffered a concussion of the brain and of the spinal cord; both bones in his left arm were broken, the fracture extending into the wrist; the larger bone below his left knee, the tibia, was fractured, the fracture extending into the joint cavity; and the upper part of the hip joint that fits into the pelvic bone was fractured and dislocated, the back part of it being torn away. The doctors were unable to get the bone back in place by traction, and had to put the patient to sleep in an effort to get the hip joint in place, but it is still out.

He remained unconscious for about two weeks, due to the shock and concussion of the brain and the spinal cord. Though he was unconscious, it was still necessary to put him to sleep to manipulate the hip joint, because that much pain "was liable to throw him back in shock". The dislocated hip joint caused him intense pain in the hip and in the back over a long period, and it was necessary to give him opiates or sedatives for relief.

A plaster of paris cast was put on his body, extending from his arms down to and including his feet. A cast was also placed on his left arm. He remained in the hospital about six weeks or until December 24, 1954, when the doctor permitted him to be taken home in an ambulance and put to bed there. He was later taken back to the hospital for a week or so and brought back home, where he was confined to his bed for several months. Then for some six more months he was able only to move about the house on crutches and later had to use a cane until May 1956.

584

He was wholly disabled from November 1954 to June 1956. Then he was permitted to go back to his former employer, and put upon light work. His loss in wages was $8,908.98, his doctor's bill $1,100, and his bills for hospital and medicines were $949.02, totaling approximately $11,000 of actual out-of-pocket loss, not counting the loss of his automobile. In addition to his pain and suffering, he has permanent injuries causing 25 percent permanent partial disability.

■ This case differs from a case of contract or property, where the damage or value is reasonably certain. In a case for personal injuries the law can only say that plaintiff is entitled to reasonable compensation for his bodily injuries, his pain and suffering, his disability, loss of earnings and expenses; it cannot furnish any fixed or certain standard for measuring such damages, but must leave the amount to the judgment of a jury guided by the facts and circumstances of the case. Power Packing Co. v. Borum, 8 Tenn. App. 162, 180; City of Nashville v. Brown, 25 Tenn. App. 340, 350, 157 S. W. (2d) 612; Thoni v. Hayborn, 37 Tenn. App. 56, 61-62, 260 S. W. (2d) 376.

■ The amount of damages is primarily for the jury to determine, and next to the jury the most competent person to pass on the matter is the judge who presided at the trial and heard the evidence, and after he has approved the verdict it is not for us to substitute our judgment for his or the jury's, but it is our duty not to disturb the verdict unless it is plainly so unreasonable as to shock the judicial conscience. Reeves v. Catignani, 157 Tenn. 173, 176, 7 S. W. (2d) 38; City of Nashville

v. Brown, supra; Monday v. Millsaps, 37 Tenn. App. 371, 412, 264 S. W. (2d) 6.

This is especially true where the Trial Judge has suggested a remittitur to reduce the verdict to the amount he thought proper; and such action on his part is entitled to added weight in determining whether the verdict is excessive. Ezell v. Post Sign Company, Inc., 30 Tenn. App. 256, 260, 205 S. W. (2d) 13, 15; Smith v. Sloan, 189 Tenn. 368, 377, 225 S. W. (2d) 539, 227 S. W. (2d) 2; Minton v. Gobble, 42 Tenn. App. 475, 304 S. W. (2d) 337, 341.

 Upon these authorities, and considering the serious and permanent injuries of plaintiff, and the intense and prolonged pain he suffered and will continue to suffer, together with his permanent disability and loss of wages and expenses, we cannot say that the judgment, as reduced by the remittitur, is unreasonable or so excessive as to require us to grant a new trial or suggest a further remittitur.

For the Cab Company, however, it is urged that this verdict and judgment is "outrageously out of line, even with the largest judgments rendered in this state"; and learned counsel have reviewed and discussed the amounts in a number of our reported cases.

"Just compensation may vary widely in different cases, even when the physical injuries are the same" (Power Packing Co. v. Borum, supra); and there is such a wide variation in the amounts, even where the injuries are more or less the same, that no case is of much value as a precedent for another case. Waller v. Skeleton, 31 Tenn. App. 103, 126, 212 S. W. (2d) 690.

There are, however, a number of cases in this state in which verdicts as large, or even larger, than this verdict, as reduced, have been sustained for comparable injuries or injuries more or less similar to those here involved. Some of such cases are:

Olson v. Sharpe, 36 Tenn. App. 557, 259 S. W. (2d) 867 (verdict for $100,000 reduced by remittitur to $80,000); Monday v. Millsaps, supra (verdict for $109,000 reduced by remittitur to $90,000); Moseley v. Vanderbilt University (verdict for $85,000 reduced by remittitur to $65,000, see Vanderbilt University v. Hartford Accident & Indemnity Co., D. C., 109 F. Supp. 565, 569); W. W. Whitus et al. v. Sarah B. Pharris, Davidson Law, op. Ct. App., filed July 28, 1950, unreported (verdict for $57,500 sustained); Lola Alexander v. Fred Pollock et al., Davidson Law, op. Ct. App., filed July 1, 1955, unreported (verdict for $55,000, cert. denied).

All of the assignments of error are overruled, the judgment of the Circuit Court is affirmed, and judgment will be entered here for plaintiff against defendant Yellow Cab Company for the amount of the judgment below with interest. The costs of the appeal in error are adjudged against defendant and the surety on its appeal bond.

Hickerson and Shriver, JJ., concur.