**Harrell F. HUGGINS**

v.

**Dr. Joseph W. GRAVES and Nazareth Literary and Benevolent Institute**

v.

**Dr. Chester G. ADAMS et al., d/b/a Anesthesiologists, Associated, Third-Party Defendants.**

Civ. A. No. 3374.

United States District Court
E. D. Tennessee, S. D.

Oct. 24, 1962.

H. Keith Harber, Goins, Gammon, Baker, & Robinson, Chattanooga, Tenn., for plaintiff.

Whitaker, Hall & Haynes, Chattanooga, Tenn., for Graves.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for Nazareth L. & B. I.

Strang, Fletcher, Carriger & Walker, Chattanooga, Tenn., for Anesthesiologists, Associated.

FRANK W. WILSON, District Judge.

This case arose from the confusing of two patients in a hospital, and the consequent performing on each patient of the operation intended for the other. In the removal of two patients from their hospital rooms to the operating rooms, the hospital charts of the patients were mixed and each patient was then placed in the operating room scheduled for the other. The result was that the plaintiff, who had been scheduled for a hemorrhoidectomy at the hands of one doctor received instead an orchidectomy and hernia operation at the hands of another doctor. At the same time the patient scheduled for the orchidectomy and hernia operation received instead a hemorrhoidectomy. These errors were not discovered until some time later when one of the patients was returned to the other patient's room following the operation.

The principal suit was brought by Harrell F. Huggins, one of the patients, against Dr. Joseph W. Graves, who performed the orchidectomy upon the plaintiff, and against the Nazareth Literary and Benevolent Institute, the corporation which owns and operates the hospital in which the operation was performed. This lawsuit was based upon negligence.

Graves and Nazareth in turn filed third-party suits against Anesthesiologists, Associated, a partnership, one of whose members administered the anesthesia to the plaintiff, charging the third-party defendant with negligence in anesthetizing the plaintiff without having identified him and thereby preventing his identification by others. The third-party suit sought indemnity from the Anesthesiologists, upon the theory that the latter was guilty of active negligence while the original defendants were guilty of only passive negligence, if any; and sought contribution upon the theory that the Anesthesiologists were joint tortfeasors with Graves and Nazareth.

The case was submitted to a jury upon special issues and resulted in a verdict awarding $100,000 to Huggins against Graves and Nazareth and awarding contribution to Graves and Nazareth against the Anesthesiologists. The verdict found against any right to indemnity in the third-party suit.[1]

---

1. The charge to the jury upon the issues of indemnity and contribution was as follows:

"We come now to the third-party suits filed by Dr. Graves and by the Nazareth Literary & Benevolent Institute against Anesthesiologists, Associated. As I have indicated, you will come to a consideration of these third-party suits only if you find that Dr. Graves or the Institute or both of them are liable to Mr. Huggins, because the third-party suits ask only that Anesthesiologists, Associated be held liable to Dr. Graves and the Institute for all or a part of any verdict in favor of Mr. Huggins against Dr. Graves and the Institute.

"The third-party suits each ask for what is known as 'indemnity,' or, in the alternative, for what is known as 'contribution.' I will charge you first with regard to the law as to indemnity, and then with regard to the law as to contribution.

"Under the law of Tennessee, a person who has been held liable for negligence to one party may be indemnified or may recover indemnity in the amount of his liability from a third party, if he establishes that the third party was also guilty of negligence proximately causing or contributing to the cause of the accident, and that the negligence of the third party was active negligence, while his own negligence was only passive.

"Where several persons participate in a wrongful act in differing degrees, that is, where one has been guilty of positive or active negligence, and another has been guilty of only passive negligence, the one guilty of passive negligence, if compelled to pay damages to an injured third party, may recover what is known as indemnity for the amount of his liability from the person guilty of active negligence.

"An indemnity or active-passive negligence situation may be presented where one party makes or creates the condition that causes damage, and the other party merely fails to detect or remedy that condition.

"If a third-party plaintiff, Dr. Graves or the Memorial Hospital, considered separately, was guilty of negligence which proximately caused or contributed to the cause of the accident in this case, but such negligence was only passive negli-

The Anesthesiologists have moved for a directed verdict or for a judgment notwithstanding the verdict, upon the grounds, first, that contribution between or among joint tortfeasors is not permitted by the law of Tennessee; second, that even if contribution is permitted it can only be sought in a separate suit after judgment has been rendered against and paid by the party seeking contribution; and, finally, that the evidence was insufficient to support a finding that the Anesthesiologists were tortfeasors from whom contribution might be required. Whether contribution should be pro rata or on a comparative negligence basis is not in issue, because the parties stipulated before submission of the case to the jury that any contribution awarded should be upon a ratable basis, and the judgment accordingly provided for payment to Huggins of $50,000 each by Graves and Nazareth, and for recovery by Graves and Nazareth of $16,666.66 each against the Anesthesiologists.

■ With regard first to the question of the availability of contribution between or among tortfeasors, the common law rule on this question derived from the English case of Merryweather v. Nixan, ·8 T.R. 186, 101 Eng.Rep. 1337. That case merely denied contribution between intentional wrongdoers, but has been made the basis of the view that, with few exceptions, contribution is gen-

gence, that party could recover indemnity against the Anesthesiologists, if the latter were guilty of positive or active negligence which also proximately caused or contributed to the cause of the accident.

"On the other hand, if you find that the third-party plaintiffs, Dr. Graves or Memorial Hospital, or either of them, was guilty of positive or active negligence, then such third-party plaintiff could recover no indemnity against the Anesthesiologists. Similarly, if you find that either or both Dr. Graves or the Hospital was guilty of gross negligence, then such party would not be entitled to indemnity against the Anesthesiologists.

"With regard to the alternative claim of the third-party plaintiffs for contribution, the law of Tennessee provides that where several persons are jointly involved in a wrong which is not necessarily or ordinarily unlawful [in the sense of being criminal], one who acted without moral guilt or wrongful intent in the commission of the act, and who is called upon to respond in damages by reason of his participation in the act, may recover what is known as contribution for a portion of his liability from a third party, if he can establish that the third party was also guilty of negligence proximately causing or contributing to the cause of the accident, under such circumstances that they were jointly responsible for the accident.

"Contribution, as distinguished from indemnity, may be recovered in such situations even if the party seeking it was guilty of positive or active negligence, provided it appears that the negligence of both parties proximately caused or contributed to the cause of the accident, and that both parties were jointly re-

sponsible therefor. However, as in the case of indemnity, there can be no recovery of contribution if the party seeking it was guilty of gross negligence.

"In the present case, if you should find that the act or acts alleged to have caused damage to Mr. Huggins were not necessarily or ordinarily unlawful, and if you find that Dr. Graves and/or the Memorial Hospital (or its agents) acted without moral guilt or wrongful intent in the commission of their part in the alleged accident, and if you should find that Dr. Graves or the Hospital or both of them are liable to Mr. Huggins in damages, then Dr. Graves or the Hospital or both of them, as the case may be, would be entitled to contribution *if* you find that the Anesthesiologists participated in the wrong done to Mr. Huggins in such a manner as to be jointly responsible therefor with Dr. Graves or the Hospital or both of them.

"In summary, Dr. Graves and the Hospital contend in their third-party suits that, if they were guilty of negligence which renders them liable to Mr. Huggins, their negligence was only passive, while the Anesthesiologists were guilty of active negligence, so that Dr. Graves and the Hospital are entitled to recover indemnity from the Anesthesiologists; or, in the alternative, they contend that any negligence on their part, even if positive or active so as to prevent recovery of indemnity, concurred and operated together with the negligence on the part of the Anesthesiologists, so that they and the Anesthesiologists were jointly responsible for the accident, and so that they are entitled to recover contribution from the Anesthesiologists."

erally unavailable among tortfeasors. See Restatement, Restitution, p. 387; Prosser, Torts, sec. 46 at p. 247. This was the view long ago adopted in Tennessee. Rhea v. White, 40 Tenn. 121; Anderson v. Saylors, 40 Tenn. 551. The question, then, is whether this rule has been changed in Tennessee. The Court is of the opinion that it has.

In Central Bank & Trust Co. v. Cohn (1924), 150 Tenn. 375, 264 S.W. 641, the Court permitted contribution between parties held jointly liable for a conversion of trust property, where the party seeking contribution had been guilty of a merely technical and unintentional conversion. The Court quoted with approval a statement from 2 Pomeroy, Equitable Remedies, sec. 916, that

> "where several are jointly responsible for an act not necessarily nor ordinarily unlawful, one who acted without moral guilt or wrongful intent in the commission of the act, and who has paid the damages caused thereby, may recover contribution from the other wrongdoers."

The Cohn case represented at least some retreat from any absolute rule against contribution between tortfeasors.

Then, in Davis v. Broad Street Garage (1950), 191 Tenn. 320, 232 S.W.2d 355, contribution was allowed between two tortfeasors whose concurring negligence had caused personal injury to another. The significance of this holding was somewhat obscured by the Court's reference to Cohen v. Noel (1933), 165 Tenn. 600, 56 S.W.2d 744, an earlier case which had allowed *indemnity* to a tortfeasor guilty of "passive" or "negative" negligence, as against a co-tortfeasor guilty of "active" or "positive" or "affirmative" negligence.[2] The Court said that Cohen v. Noel had held that a "joint tortfeasor would be allowed *contribution* from another where his negligence was alleged to be only passive, whereas his adversary was guilty of active negligence." (Emphasis added.) Because of this language, it might be argued that the Davis case approved contribution between tortfeasors only in active-passive negligence situations. However, a careful reading of the remainder of the case compels the conclusion that the holding of the Court was not so limited.

For one thing, immediately after citing Cohen v. Noel, the Court cited Central Bank & Trust Co. v. Cohn, supra, for the proposition that contribution is available "upon the theory that the joint tortfeasors were 'guiltless of any intended wrong,'" and then stated that

> "Our cases make a clear distinction between wilful and intended wrongs

2. Much of the uncertainty in the cases is created by a failure to distinguish between indemnity and contribution. In dealing with the rights of joint tortfeasors inter sese the cases sometimes use the words as if they were synonymous or interchangeable, whereas historically and actually there is a substantial difference between the two. Indemnity contemplates full reimbursement. Contribution permits only a ratable or proportional reimbursement. Indemnity developed in the law courts and generally arises from an express or implied contract of indemnity. Contribution is a remedy that developed in equity in recognition that where one of several persons equally liable for the same deed is compelled to pay the whole of it, he should in fairness and equity be entitled to obtain from the others the payment of their respective shares. See 13 Am. Jur., Contribution, sec. 2 and 27 Am.Jur., Indemnity, sec. 2. This confusion has been further compounded by the use of the "active vs. passive" negligence test in the allowance of indemnity. In the case of Cohen v. Noel, supra, the Court there speaks of the allowance of indemnity as being an exception to the rule against "indemnity or contribution" as between joint tortfeasors. By the allowance of indemnity the rule of the Cohen case also appears to be an exception to the usual rule that indemnity is based upon express or implied contracts. A lack of uniformity exists both in Tennessee and in other states, where the "active vs. passive" negligence test has been adopted, in defining and applying the test. The terms "active" and "passive" are variously used or defined as meaning remote or proximate negligence, primary or secondary negligence, affirmative or negative negligence, and/or negligence by commission or by omission.

in which the general rule of noncontribution is recognized and wrongs resulting from purely negligent acts, mistakes or other unintentional breaches of the law in which contribution is allowed." (p. 324, 232 S.W.2d p. 357.)

Further on, the Court apparently conceded that previous cases had not actually made the law as clear as this language would indicate, and, at the same time, demonstrated that the Court was not deciding the Davis case solely upon the rationale of Cohen v. Noel:

"This [the Davis case itself] may be a further extension of the exceptions to the rule as heretofore applied by the courts of this State. If it is, justice and right demand that this further extension to the exceptions be here applied." (p. 325, 232 S.W. 2d p. 357.)

Thereupon the Court quoted with approval the following language from Prosser:

" 'There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the plaintiff's whim or malevolence, or his collusion with the other wrongdoer * * *.' Prosser on Torts, page 1114." (pp. 325–326, 232 S.W.2d pp. 357, 358.)

The opinion then concludes with a quotation of the language, quoted above, from Pomeroy on Equitable Remedies.

Earlier in the opinion, the Court had stated that

"We, herein, only apply the rule and its exceptions insofar as they are applicable to the facts alleged in the instant bill." (p. 325, 232 S.W.2d p. 357.)

Commenting upon this language, Justice Tomlinson said in his dissenting opinion:

"I cannot escape the conclusion that the majority opinion, instead of making what it calls an exception to, re-verses in fact the general rule prohibiting contribution among joint tort-feasors against whom a third party has obtained a judgment for the damage resulting by concurrence of their independent acts of negligence coinciding in time and place." (p. 329, 232 S.W.2d p. 359.)

Whereupon the Court, in an opinion upon a petition to rehear, stated as follows:

"Upon reconsideration and further thought the majority of this Court hold that the rule of law expressed in the majority opinion should be the law of Tennessee and not just applicable to the facts of the instant case. We feel that justice, right and equity demand this conclusion." (p. 330, 232 S.W.2d p. 359.)

Upon consideration of all aspects of the Davis case, this Court is of the opinion, as recognized by Justice Tomlinson in his dissent, that that case "instead of making what it [at first] calls an exception to, reverses in fact the general rule prohibiting contribution among joint tortfeasors."

This conclusion is supported by the commentators who have considered the matter. Thus one legal writer has observed that

"A reading of the opinion, the dissent, and the opinion on the petition to rehear [in the Davis case] leaves little doubt that the court recognized that the blanket prohibition against contribution among tortfeasors was an archaic doctrine, with little, if any, support in reason and concluded that equity and justice demanded that Tennessee align itself with modern authority and permit contribution among tortfeasors, except in the case of a willful tort, immoral action or conscious violation of the law." Sturdivant, Joint Tortfeasors in Tennessee and the New Third-Party Statute, 9 Vand.L.Rev. 69, 74.

Similarly, Dean Wade, in commenting upon the rule against contribution, has observed that

"A few states followed a minority view and held that there might be contribution at common law between joint tortfeasors who were merely negligent. Tennessee is one of these states, reaching this forthright and commendable result in the case of Davis v. Broad Street Garage." Wade, Restitution—1954 Tennessee Survey, 7 Vand.L.Rev. 941, 948.

And Dean Prosser likewise lists Tennessee among the states which permit contribution between tortfeasors, upon the authority of the Davis case. Prosser, Torts, sec. 46 at p. 249.

The Court's conclusion in this regard is not altered by the language in the later case of American Casualty Co. v. Billingsley (1953), 195 Tenn. 448, 260 S.W.2d 173. In that case restitution was sought by a declaration filed in the Circuit Court and alleging an active-passive negligence situation. The Supreme Court ruled that a demurrer should not have been sustained to such a declaration, and spoke of the suit as being for contribution, citing Davis v. Broad Street Garage. It would appear, as this Court has observed in a previous opinion, that the Billingsley case should have been regarded as an action for indemnity. La-Ferry v. Ajax Truck Rentals, D.C., 161 F.Supp. 707, 709. For one thing, contribution is an equitable remedy to be sought by bill in equity in Tennessee, where courts of law and equity are separate, rather than by declaration at law. Rhea v. White, 40 Tenn. 121; Davis v. Broad Street Garage, supra; Vaughn v. Gill, Tenn., 264 S.W.2d 805; 13 Am.Jur., Contribution, sec. 2; 27 Am.Jur., Indemnity, sec. 2. More important, contribution "neither requires nor contemplates proof of an active-passive negligence situation." Sturdivant, Joint Tortfeasors in Tennessee and the New Third-Party Statute, 9 Vand.L.Rev. 69, 73. Thus the latest Tennessee case on contribution involved no allegation of active and passive negligence and the Supreme Court, though dismissing the case upon other grounds, made no comment upon

the absence of such allegation. Vaughn v. Gill, Tenn., 264 S.W.2d 805.

Nor is the Court's conclusion altered by the language of the Court of Appeals in Yellow Cab Co. v. Pewitt, 44 Tenn.App. 572, 316 S.W.2d 17. There the court, in construing a new procedural statute, observed as follows:

"Whatever this may have meant, it seems to have been merely procedural. It does not appear to have created any new cause of action, or given the defendant any new substantive right. Nor does it appear to have changed the rule of joint and several liability of joint tort-feasors, or the rule of no contribution between them."

This language is merely dictum insofar as it relates to the right of contribution. Moreover, even if it is correct that the statute there under consideration did not change the common law rule against contribution, this has no bearing upon the Court's conclusion that the Davis case did change that rule.

The Court therefore concludes that the right of contribution exists under Tennessee law as between joint tortfeasors in a negligence action in the absence of willful or wanton negligence upon the part of the party seeking contribution. Moreover, this result accords with reason and, as stated by the Tennessee Supreme Court in the Davis case, supra, "justice, right and equity demand this conclusion."

Turning next to the question of whether contribution may properly be sought by third-party action before judgment has been rendered against and paid by the original defendant, it is necessary first to consider the case of Vaughn v. Gill, Tenn., 264 S.W.2d 805. In that case contribution was sought by a tortfeasor against whom a judgment had been rendered, but whose insurer had paid the judgment. The Tennessee Supreme Court held that the complainant tortfeasor stated no cause of action, because his bill revealed that his insurer

rather than the complainant himself had paid the judgment. The Court further stated that contribution would not in any event have been available, because the complainant and his co-tortfeasor were not under a common burden of liability, no judgment having been obtained by the injured party against the co-tortfeasor.

The common burden of liability purported to be required by the Vaughn case has been criticized rightfully as it seems to this Court. Wade, Restitution —1954 Tennessee Survey, 7 Vand.L.Rev. 941, 949; Sturdivant, Joint Tortfeasors in Tennessee and the New Third-Party Statute, 9 Vand.L.Rev. 69, 75. These commentators have observed, for example, that no importance had been attached to the existence of a judgment against both tortfeasors in Davis v. Broad Street Garage, supra, and that only five months earlier, in American Casualty Co. v. Billingsley, supra, the Court had purported to sustain a suit for contribution where there had not been judgments against both tortfeasors. Moreover, the Vaughn case's requirement of a common burden was merely a dictum in that case, and it is perhaps significant that that opinion was withdrawn from official publication, which would seem to indicate "some reluctance on the part of the Tennessee Supreme Court to follow the rules set out in that decision." LaFerry v. Ajax Truck Rentals, D.C., 161 F.Supp. 707, 708. For these reasons this Court is of the opinion that the requirement of a common burden of liability as expounded in Vaughn v. Gill is not binding as the law of Tennessee.

With regard to the actual holding of the Vaughn case, that contribution is available only to the party who has actually paid a judgment, it is believed that this does not preclude the recovery of contribution by a third-party action as in the present case. The problem here presented is similar to that raised by the objection that, aside from any question of insurance, a tortfeasor is not entitled to contribution until judgment has been rendered against and paid by him. Both of these objections are matters which can be provided for in the wording of the judgment for contribution. Thus it is stated in 3 Moore, Federal Practice, sec. 14.11, that:

"The fact that contribution may not actually be obtained until the original defendant has been cast in judgment and has paid does not prevent impleader; the impleader judgment may be so fashioned as to protect the rights of the other tortfeasors, so that defendant's judgment over against them may not be enforced until the defendant has paid plaintiff's judgment or more than his proportionate share, whichever the law may require."

To the same effect see Vaughn v. Terminal Transport Company, Inc., D.C., 162 F.Supp. 647; LaFerry v. Ajax Truck Rentals, D.C., 161 F.Supp. 707, 710.

In the present case, the judgment has been so worded as to preclude the recovery of contribution by the third-party plaintiffs until they have paid the judgment of the original plaintiff. Furthermore, it has not been made to appear in the record that the original judgment will be paid by an insurer rather than by the original defendants and third-party plaintiffs themselves, and no question has been raised in this regard. Should such a question be raised, some modification of the judgment might be required, but not a denial of the right of contribution.

The Court is aware that a difference of opinion exists where this issue has been previously passed upon by the Federal Courts of this District. In Vaughn v. Terminal Transport Company, Inc., D.C., 162 F.Supp. 647, and LaFerry v. Ajax Truck Rentals, D.C., 161 F.Supp. 707, the Court held that the federal third-party practice did permit a suit for contribution as a part of the original negligence action. In Fontenot v. Roach, D.C., 120 F.Supp. 788, and Trammell v. Appalachian Electric Cooperative, D.C., 135 F.Supp. 512, the Court held that no such action would lie against the third party until the judgment was returned and

satisfied in the original negligence action. While the result reached in the Fontenot and Trammell cases no doubt correctly states the Tennessee law, where a dual system of law and equity courts exists, it is the opinion of this Court that the timing or sequence of the contribution action is procedural and therefore governed in Federal Court by the Federal rules relating to third-party practice. It would appear to this Court that technical procedural requirements which would lead only to circuity of action should be avoided where possible and that reason would support the rule that such third-party practice as was here undertaken is proper. Moreover, Rule 14 of the Federal Rules of Civil Procedure, 28 U.S. C.A., seems to contemplate just such third-party proceedings as were here accomplished when it permits a third-party action against one "who is or *may be* liable." (Italics supplied.)

It would indeed be a futile and circuitous procedure in this case, where the third-party plaintiff has now paid the judgment, if the Court were to sustain the third-party defendant's motion on this ground and set aside the judgment, thereby requiring the third-party plaintiff to repeat the very same judicial proceedings they have just completed, with presumably the same ultimate result—all just because of an artificial procedural rule that they should have waited until they had a judgment against them and had paid it, and then brought a separate lawsuit for contribution.

The remaining question presented by the motions under consideration is as to the sufficiency of the evidence to warrant a finding that the third-party defendants were tortfeasors from whom contribution might be required. In this connection it is to be observed, as before stated, that contribution is an equitable remedy. Therefore, although the question of contribution was submitted to the jury, the verdict upon this issue is advisory only, and does not relieve the Court of the responsibility of passing upon that issue. The Court is of the opinion, however, without undertaking a detailed review of the evidence, that the same supported the verdict of the jury, and was sufficient to require an equitable award of contribution by the Court. Among other testimony, there was testimony to the effect that one anesthesiologist belonging to the defendant Association examined and interviewed the plaintiff upon the evening prior to the operation in preparation for administering the anesthetic the next morning at the operation. However, another anesthesiologist belonging to the defendant Association attended the operation and administered the anesthetic without ever having previously seen or interviewed the patient. This procedure was followed by the defendant Association not for any reason relating to the welfare of the patient, but for the convenience of the anesthesiologists in scheduling their days off. At the time the anesthesia was administered the patient was already under such sedation as to be either unable or unreliable for the purpose of making his own identification. The degree of care required of all parties participating in the operation is commensurate with the danger to which the patient is exposed. As the danger of harm to the patient in event of error is very great, therefore the degree of care is very high. Identification of the patient for the administering of anesthesia would appear to be the minimum degree of care required. For the anesthesiologist to rely wholly upon a chart accompanying the patient or to rely wholly upon others to make the identification is not a proper degree of care considering the risk of harmful results to the patient and the lack of any emergency. It appears that the unfortunate result to this patient was caused by a series of errors of both commission and omission upon the part of the hospital, the operating doctor, and the anesthesiologists. It is not necessary to determine the comparative negligence of the parties, for as noted earlier, no question is raised as to the amount of the contribution, the parties having stipu-

lated that any contribution awarded should be apportioned ratably between the defendants and the third-party defendants.

All grounds of the motions will therefore be overruled.

Order accordingly.