**COMMERCIAL CREDIT DEVELOP-MENT CORPORATION**

v.

**SCOTTISH INNS OF AMERICA, INC.**

**SCOTTISH INNS OF AMERICA, INC.**

v.

**C. Arthur RUTTER, Jr., et al.**

Civ. No. 3-75-52.

United States District Court,
E. D. Tennessee, N. D.

Sept. 23, 1975.

J. W. Baker, Poore, Cox, Baker & McAuley, Knoxville, Tenn., for plaintiff.

Ted H. Lowe, Bernard E. Bernstein, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was filed February 20, 1975, by Commercial Credit Development Corporation [Commercial Credit], seeking recovery on a guaranty agreement executed by defendant, Scottish Inns of America, Inc. [Scottish Inns].[1] The agreement provided that Scottish Inns would guarantee all or a portion of a $2,400,000.00 loan made by Commercial Credit to Cavalier Scottish Inns, Inc. [Cavalier]. Jurisdiction is based upon diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332(a). The case was tried to the Court without a jury.

On March 18, 1975, Scottish Inns filed a motion for partial summary judgment, an answer, and third-party complaint against Cavalier and Messrs. Calvin W. Breit, C. Arthur Rutter, Jr., and Jerry L. Walden.[2]

In its motion for summary judgment, Scottish Inns contended that it could not be held on the guaranty for an amount in excess of $500,000.00. The motion was denied in an Order filed March 31, 1975.

The theories of the third-party action are that Breit and Rutter had agreed to hold Scottish Inns harmless for any losses it might sustain under the guaranty with Commercial Credit, that Cavalier was the primary obligor on the guaranteed loan, and that Cavalier had breached certain franchise agreements that it had entered into with Scottish Inns and was liable therefor in damages.

Third-party defendants moved the Court to dismiss the third-party action on April 25th on various grounds, including lack of personal and subject matter jurisdiction over the third-party action. This motion was denied in a Memorandum and Order filed May 14th.[3]

A formal pretrial conference was held on May 21st. At that time the Court expressed its belief to the parties that before Commercial Credit proceeded further in this lawsuit, it should first foreclose on the three deeds of trust and other collateral it held as security on the $2,400,000.00 loan it had made to Cavalier. Initially, Commercial Credit was reluctant to follow this suggested course of action, but several weeks later it agreed to initiate foreclosure proceedings against the collateral in Virginia.

1. The guaranty is Exhibit 14.

2. Breit is the president and a former shareholder of Cavalier. Rutter is the secretary and a former shareholder of Cavalier. The third-party action against Walden was dismissed without prejudice at trial by agreement of the parties.

3. A similar case, The *Fidelity National Bank v. Scottish Inns of America, Inc., et al.,* Civil Action No. 3–75–70 (E.D.Tenn.) was also discussed in the Memorandum and Order. That case was settled before the date set for trial.

The Court directed the parties to cooperate in the foreclosure proceedings in an Order filed June 18, 1975.[4]

A third-party answer and counterclaim were filed June 11th. The details of this claim are set out below.

On September 4th Scottish Inns, joined by Breit and Rutter, moved the Court for summary judgment on the ground that Scottish Inns was no longer liable on the guaranty agreement because the balance due on the loan had been reduced to less than $1,900,000.00. This motion was denied on September 9th without prejudice to renew at the time of trial. The contentions made in this motion will be discussed more fully below.

Scottish Inns answered the third-party counterclaim on September 9th, denying the allegations therein and setting up a release between it and Cavalier as a defense to the action.

Shortly before trial was scheduled to begin on the morning of September 16, 1975, the Court was informed in chambers by counsel for the parties that a settlement had been reached between Commercial Credit and Scottish Inns. The Court was further informed that if trial could be delayed for an hour or so, the possibilities of settling the entire lawsuit were good. Shortly before 10:00 A.M. counsel reported to the Court that the third-party action could not be settled.

Shortly thereafter, in open court, counsel for Commercial Credit and Scottish Inns announced the terms of the settlement. In substance, the settlement provided that Scottish Inns would execute a note in favor of Commercial Credit in the amount of $550,000.00. The note will provide for payment of $50,000.00 in cash within a specified time and monthly payments of $5,000.00 beginning October 16, 1975. The balance of the note will be due in five years. Security for the note will be provided by second mortgages on certain of Scottish Inns' motel properties.[5]

After announcement of the settlement, counsel for the third-party defendants and counterclaimants made several motions. The Court ruled on these motions from the bench. In addition to the findings made from the bench, the Court makes the following additional findings of fact and conclusions of law.

### Motion for Continuance

Counsel moved the Court for a continuance of the third-party action on the ground that the settlement of the original action on the eve of trial was a surprise to him and his clients. Counsel asserted that he had relied on the defenses set forth by Scottish Inns and needed additional time in which to amend the pleadings and prepare for trial.

The Court denied the motion. In the opinion of the Court, Cavalier, Breit and Rutter were not prejudiced in any way in asserting their defense to the third-party claim, nor were they prejudiced in pursuing their counterclaim.

It is recognized that the third-party defendants are entitled to assert against the plaintiff any defenses which the third-party plaintiff (Scottish Inns) has to the plaintiff's claim as well as any defenses third-party defendants may have to the third-party claim. Rule 14, F.R.C.P.; C. Wright, *Law of Federal Courts* § 76 (2d ed. 1970). The third-party defendants may defend on the original claim in order to protect their interests in the situation in which "the third-party plaintiff fails or neglects to assert a proper defense to the plaintiff's

4. Foreclosures were subsequently carried out against the Cavalier motel sites at Staunton, Fredricksburg, and Petersburg, Virginia. The balance due on the loan was reduced from $2,678,835.50 ($2.4 million plus accrued interest) to $1,712,286.30 as of July 23, 1973.

5. A handwritten memorandum containing the terms of the settlement was introduced as Exhibit 54.

action." Committee Note of 1946 to Rule 14; 3 J. Moore, *Federal Practice* ¶ 14.01 (2d ed. 1974).

■ The only colorable defense in the original action was set forth by Scottish Inns in its second motion for summary judgment. This motion was joined in by Breit and Rutter. As discussed previously, Scottish Inns contended that it was no longer liable to Commercial Credit for any amount under the terms of the guaranty agreement. Paragraph 9 of that agreement provides as follows:

"The provisions of Paragraph 2 hereof notwithstanding, Undersigned's obligation to you hereunder shall be discharged upon the reduction in principal of the aforesaid obligation to One Million Nine Hundred Thousand Dollars ($1,900,000.00)."

The contention was made in the motion that because the foreclosures had resulted in a reduction of the principal on the loan to some $1,700,000.00, Scottish Inns had no further obligation under the guaranty.

After reviewing the record extensively in connection with this motion, the Court told counsel for the respective parties at an informal pretrial conference several days before trial that, in its opinion, Scottish Inns' liability to Commercial Credit would be limited to the principal sum of approximately $500,-000.00. The Court did not, however, formally rule on the matter and reserved such a ruling for the trial after all the parties had an opportunity to express their views.

The point to be made is that counsel for all the parties knew several days before trial that it was likely that a judgment could be entered against Scottish Inns in an amount approximating $500,000.00. The settlement figure was very close to this. Furthermore, as will be set out below in connection with the discussion on the reasonableness of the

settlement, Scottish Inns had, in reality, no defense in the original action to the extent of approximately $500,000.00. It follows from this that the third-party defendants were not prejudiced when the settlement prevented their reliance on the defense previously asserted by Scottish Inns.

Breit and Rutter both signed an indemnification and hold harmless agreement in which they agreed to hold Scottish Inns harmless "from any and all loses occasioned by their guarantee to Commercial Credit Corporation . . . ." Exhibit 38. Cavalier was obligated to Scottish Inns since the former was the maker of the note that the latter had guaranteed.[6] Thus, the third-party claim was not complicated and there was no reason to continue the trial of the third-party action to a later date.

On June 19, 1975, this case was assigned for trial on September 16th. A formal pretrial conference was held in May and other pretrial conferences were held in chambers with counsel for all the parties present.

The Court has set out the proceedings in this case in some detail to demonstrate that all the parties to this lawsuit had ample time to prepare for trial on the assigned date. The Court does not feel that the third-party defendants were prejudiced in any way by the denial of their motion for a continuance.

*Motion to Dismiss Third-Party Action*

After denial of the motion for a continuance, counsel for the third-party defendants moved to dismiss the third-party action as being "premature." Counsel's argument, as the Court understands it, is that unless and until Scottish Inns pays over money to Commercial Credit in satisfaction of the settlement agreement, Cavalier, Breit and Rutter are not obligated to indemnify Scottish Inns. We agree with this, but do not agree that this is a basis for dismissal.

6. A copy of the note was filed as Exhibit 5.

Rule 14, F.R.C.P., allows a defendant to implead "a person not a party to the action who is *or may be* liable to him for all or part of the plaintiff's claim against him." (Emphasis added) Cavalier, Breit and Rutter are in the posture of indemnitors in the third-party action and it was permissible to proceed to trial on these obligations even though Scottish Inns had only obligated itself under the settlement to make payments at some future date. *Huggins v. Graves*, 210 F.Supp. 98 (E.D.Tenn. 1962), *aff'd*, 337 F.2d 486 (6 Cir. 1964); 3 J. Moore, *Federal Practice* ¶ 14.08 (2d ed. 1974).

The judgment entered in this case shall require Cavalier, Breit and Rutter to indemnify Scottish Inns to the extent of their liability, only at such times and in such amounts as is paid under the settlement agreement between Scottish Inns and Commercial Credit.

### Reasonableness of the Settlement

Counsel for the third-party defendants also questioned the reasonableness of the settlement. The Court was of the opinion at that time, and is of the opinion now, that the settlement between Scottish Inns and Commercial Credit is very reasonable and fair to all parties concerned. In addition to the findings made from the bench, the following additional findings of fact and conclusions of law are made.

Counsel attacked the reasonableness of the settlement primarily on the ground that Scottish Inns had no further obligation to Commercial Credit because the foreclosures had resulted in the balance due on the loan being reduced to less than $1,900,000.00. This is the same contention raised in the motion of Scottish Inns, Breit and Rutter for summary

judgment of September 4th which was discussed previously.

Although Paragraph 9 of the guaranty agreement is somewhat ambiguous and rather inartfully worded, it is clear to the Court, after considering the exhibits and discovery depositions,[7] that the parties to that agreement intended Scottish Inns to guarantee at least $500,000.00 of the $2,400,000.00 loan made by Commercial Credit to Cavalier. Additionally, there is a substantial possibility that Scottish Inns would have been liable for some $139,000.00 in accrued interest and perhaps even reasonable attorneys' fees.

In a letter which forwarded the proposed guaranty to Scottish Inns, an attorney for Commerical Credit made the following statement:

"1. Corporate Guaranty. This is the standard form of Guaranty used by the Commercial Credit Subsidiaries, and limits the liability of Scottish Inns of America, Inc. to the payment of $500,000.00 in the event of default by Cavalier." Exhibit 13.

The wording of Paragraph 9 was changed before Scottish Inns executed the guaranty, but the intention of the parties remained the same.[8] In a report filed with the Securities and Exchange Commission early in 1975, Scottish Inns acknowledged its liability on the guaranty agreement and stated:

"The company believes the limit of its liability under said guaranty as of January 31, 1975 is $638,865.79 and certain indemnifying agreements covering any such liability will be pursued." Exhibit 22.

The $638,865.79 figure includes the original amount guaranteed ($500,000.-00) plus $138,865.79 in accrued interest through January 31, 1975.

---

7. By agreement of the parties, the discovery depositions were made part of the record at trial.

8. The wording as proposed by Commercial Credit is set out in Exhibit 13. The wording as finally agreed to is contained in Exhibit 14.

At a time before Cavalier was in default on the loan, Commercial Credit furnished information to Scottish Inn's auditor that listed the latter as a "guarantor of $500,000.00 on a $2,400,000.00 note payable to" Commercial Credit by Cavalier. Exhibit 39.

The evidence referred to above and other pertinent evidence in the record establishes that Scottish Inns was obligated for at least $500,000.00 plus accrued interest on the guaranty.

If the reduction in principal by the foreclosure to less than $1,900,000.00 were viewed as completely relieving Scottish Inns of its obligation under the guaranty, there would have been, in effect, no guaranty at all. The courts of this State hold guarantors to a much higher standard. *See Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804–05 (Tenn.1975).

Accordingly, the Court concludes that the settlement was not unreasonable and did not prejudice the rights of the third-party defendants in any way.

### *Third-Party Claim and Counterclaim*

■ After denying the motions heretofore described from the bench, the case proceeded to trial on the third-party action. In substance, the allegations of the third-party counterclaim are as follows:

(1) that Scottish Inns misrepresented certain material facts to counterplaintiffs concerning the construction and operation of seven motels which were to be operated under franchises granted to Cavalier by Scottish Inns, and that counterplaintiffs relied on these misrepresentations to their detriment, thereby causing Scottish Inns to be liable in damages;

(2) that Scottish Inns breached the seven franchise agreements and is liable to counterplaintiffs in damages therefor;

(3) that Cavalier paid $5,499.20 to Scottish Inns to carry out a national advertising campaign and the latter has not done so nor has it returned the money to Cavalier;

(4) that by failing to advertise nationally, Scottish Inns has caused Cavalier to suffer business losses;

(5) that Scottish Inns negligently manufactured, constructed and installed the prefabricated motel units it sold to Cavalier and as a proximate result Cavalier suffered damages;

(6) that Scottish Inns breached both express warranties and implied warranties of merchantability and fitness for a particular purpose in connection with the sale of certain prefabricated motel units to Cavalier;

(7) that Scottish Inns agreed to assume all costs and interest charges on two loans to Cavalier made by Hamilton Mortgage Corporation and as a result of this agreement, it owes Cavalier approximately $117,000.00; and

(8) that Cavalier was forced to purchase the prefabricated motel units from Scottish Inns in order to obtain franchises and this constituted an unlawful restraint of trade under the antitrust laws, entitling Cavalier to treble damages.

Before counterplaintiffs were allowed to introduce proof, the Court ruled that a certain release entered into between Scottish Inns and Cavalier on April 30, 1974, released all claims between those parties which had accrued prior to that date except the claims which were specifically excluded under the agreement.

The release provides, in pertinent part, as follows:

"That whereas numerous disputes have arisen between the parties relative to an accounting of funds and the construction of seven motels by Cavalier in the State of Virginia;

"And whereas the parties are desirous of compromising their said differences and mutually releasing each other from any and all claims,

"NOW, THEREFORE, for and in consideration of the following, the parties agree with each other as follows:

\* \* \* \* \* \*

"5. Cavalier does hereby release Scottish from any and all claims of any nature and description from the beginning of the world to the date of these presents except as enumerated hereinafter:

"A. Ashland, Virginia—There shall remain open any claims for roof defects in Ashland and the damage occasioned thereby but neither Cavalier nor Scottish admit to any responsibility therefore.

"B. Petersburg, Virginia—There shall remain open any claims for roof defects in Petersburg and the damage occasioned thereby but neither Cavalier nor Scottish admit to any responsibility therefore.

"C. Norfolk, Virginia—As the Norfolk project is not completed this release does not cover the Norfolk site. It is contemplated that Scottish will upon completion of the building send a crew to make last minute touchup repairs similar to that [which] has been done in Ashland, Virginia.

"D. Roanoke, Virginia—The chairs in Roanoke, Virginia are presently being replaced or repaired by Scottish.

"E. Fredricksburg, Virginia—See agreement signed by Jerry Walden for Cavalier regarding the overhang at Fredricksburg, Virginia.

"Other than the above both parties mutually release each other from any and all claims whatsoever." Exhibit 46.

Cavalier was then allowed to proceed with proof on the five claims not settled in the release and any claims which might have accrued after the date of the release. Because Cavalier no longer owns any of the seven motels due to foreclosures on its properties, the claims were limited to damages that Cavalier had actually expended money to correct or had obligated itself to pay.

After Cavalier's proof, Scottish Inns was allowed to introduce proof on certain offsets that it claimed had accrued since April 30, 1974, the date of the release. The judgment will reflect the exact dollar amounts of the damages allowed.

In addition to the findings made from the bench on the effect of the release and the claims of the individual third-party counterplaintiffs, the following findings of fact and conclusions of law are made. By the unambiguous terms of the release, any claim that Cavalier had against Scottish Inns up to and including April 30, 1974, were released except the five claims set out in Paragraph 5 of the agreement.

■ Breit and Rutter are not entitled to recover on their counterclaim. The Court felt at the time of trial, and now holds, that the claims they seek to assert in the counterclaim are claims which belong to Cavalier corporation and which can only be asserted by it.

"If the cause of action belongs to the corporation it should sue; and neither officer, stockholder nor creditor as such . . . without additional equities special to himself, can

bring the suit, unless otherwise provided by statute or the charter.

\* \* \* \* \* \*

The corporation is the sole plaintiff on all contracts running to it as sole promisee, so long as the right of action has not been passed to another . . ." (Footnote omitted). 9 W. Fletcher, *Fletcher Cyc. Corp.* (Perm. Ed.), § 4469, at 333–35 (1964).

"The general rule is, of course, well established that an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation, since the cause of action being in the corporation, the stockholder's rights are merely derivative and can be asserted only through the corporation." (Footnote omitted). *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968).

The counterclaim by Breit and Rutter is not based on a contract or contracts to which they are parties. The wrongs for which they seek redress were alleged wrongs which were primarily committed against Cavalier. Consequently the right of action is the corporation's and not that of its officers and stockholders nor of Breit and Rutter individually. *See In re Penn Central Securities Litigation*, 347 F.Supp. 1324, 1326 (E.D.Pa. 1972); 13 W. Fletcher, *Fletcher Cyc. Corp.* (Perm.Ed.) § 5911 (1970); 19 Am.Jur.2d *Corporations* § 537 (1965).

In light of the above disposition of the counterclaim by Breit and Rutter, it is not deemed necessary to discuss whether or not they were bound by the terms of the release.

Parenthetically, it appears that the release was signed by Breit as president and Rutter as secretary. Both were, at the time or formerly, substantial shareholders in Cavalier. It is recognized that they signed the release in their official capacity, but their signatures indicate that they were personally acquainted with the terms of the release.

The parties will prepare an order in conformity with the views herein expressed.