BUDDY WILSON, Plaintiff in Error, v. COOK MANU-
FACTURING CO., and CARL VERNON MERRIMAN,
Defendants in Error.—405 S.W.(2d) 584.

Middle Section. April 1, 1966.

Certiorari Denied by Supreme Court July 5, 1966.

Raulston & Swafford, Jasper, for plaintiff in error.

Kelly & Cameron, South Pittsburg, for defendants in error,

HUMPHREYS, J. One Saturday morning as Buddy Wilson was driving towards his home in his wife's automobile, a truck belonging to Cook Manufacturing Company, driven by Carl Vernon Merriman, came into glancing contact with the Wilson automobile in passing, causing it to leave the roadway and run upon some large boulders in the edge of the highway right-of-way. While Wilson was not operating at a fast rate of speed, and the collision and the resulting loss of control and the ending up of the automobile on the boulders did not result in broken bones or serious lacerations, Wilson was thrown about in the car's interior so as to injure his back.

He consulted a surgeon who employed the usual treatments: heat, massage, braces, and traction. When these afforded Wilson no lasting relief, a test was made which showed a lesion in the lumbar spine at the level of L-4, L-5. Following this test corrective disc surgery was performed. The lumbar area involved was exposed and the disc, which was found to be swollen and causing the trouble was excised.

Plaintiff's own testimony is that this operation relieved him of any further pain in his back and legs.

However, not long after this plaintiff experienced severe pain in the abdominal area where the appendix is ordinarily located, and after hospital observation, examination, and blood tests which disclosed an elevated white cell count, plaintiff's appendix was removed.

Following this operation, as the result of a breakdown in technique and procedures, plaintiff's wound became abscessed on two different occasions, requiring him to

be hospitalized, to incur associated expenses and to suffer pain, and to lose working time.

Because of his injuries Wilson sued Cook Manufacturing Company and Carl Vernon Merriman, and recovered a judgment for $47,500.00.

However, on motion for a new trial, the trial judge was of opinion the verdict was excessive by the amount of $32,500.00, and suggested a remittitur of that amount, reducing plaintiff's judgment to $15,000.00.

Plaintiff accepted the remittitur under protest, and appealed.

Here, only one error has been assigned, that the facts and circumstances of the case justify and sustain an award of $47,500.00, so that the verdict was not excessive by this amount or by any amount.

The assignment of error is based on T.C.A. sec. 27-118. This Code section, as construed in Murphy Truck Lines v. Brown, 203 Tenn. 414, 313 S.W.2d 440, authorizes this Court to restore the entire verdict and judgment, or such portion thereof as we think should be reinstated.

■ All parties recognize that in passing on this assignment of error we apply the rule stated many times, that there is no mathematical rule or formula for computing the amount of damages allowable for personal injuries in a case based on negligence; that the amount of the verdict was primarily for the jury to determine, and, next to the jury, the most competent person to pass upon the amount of the award is the judge who presided at the trial and heard the evidence. And, that the Court of Appeals will give great weight to the action of the trial court in ordering a remittitur, and will not disturb

such an order unless the trial court has abused the discretion vested in him to make such an order. Templeton v. Quarles, 52 Tenn.App. 419, 374 S.W.2d 654.

Although the rule is unquestionably as we have just stated, because of the size of the remittitur we have reviewed the record with an attitude somewhat sympathetic toward the plaintiff-in-error, but in spite of this we have concluded the trial judge did not abuse his discretion in ordering a remittitur, and that we cannot restore it in whole or in part under the authority vested in us by T.C.A. sec. 27-118.

In addition to the facts we have already recited, it should be stated that in 1957 plaintiff had undergone surgery to repair a disc condition in the fourth and fifth lumbar space, and that the surgeon who performed this operation evaluated the residual disability left with plaintiff following this operation at between zero and ten percent to the body as a whole.

In this case, plaintiff's surgeon, a Dr. Donaldson, testified that the operation was a success and plaintiff had a good recovery, and he evaluated the degree of permanent partial residual disability referrable to the surgery he had performed as being fifteen percent, and expressed the opinion that Wilson suffered from twenty-five to thirty percent permanent partial disability based on the body as a whole as a result of Dr. Gish's operation in 1957 and his operation in 1964.

It should also be stated that although plaintiff was permitted to introduce evidence with respect to his abdominal operation and its cost in time and money, and the physical condition in which it left him, on defendant's motion the trial judge directed a verdict with

respect to this aspect of the case, leaving only for consideration by the jury the damage sustained by plaintiff from his back injury. And, since no exception was preserved to this ruling, nor motion for new trial made with respect thereto, and no error assigned thereon, this question is finally settled in accordance with the trial judge's action for the purpose of this appeal.

Plaintiff's argument the remittitur should be restored is predicated on two primary grounds which we shall discuss.

He argues that his out-of-pocket losses at the date of trial amounted to $7,528.26, made up of $1,295.88 total medical expenses, and, $6,232.38 loss of wages, since at the date of trial plaintiff had not worked for forty-two weeks, and averaged when he did work $148.39 per week.

Assuming the medical expense of $1,295.88 to be correct, and it appears that it is, since this final figure is gotten by disallowing all medical expenses caused by his abdominal operation, it necessarily follows that plaintiff's loss of time attributable to this abdominal operation must likewise be deducted and only the balance of the time considered in determining this loss.

With respect to this the record reflects that Dr. Donaldson operated on October 26, 1964, and when plaintiff was discharged on November 5, 1964, although he was still feeling sore from the operation, he suffered no pain in his legs, for which he had gone to the hospital and had submitted to the operation in the first instance.

Since plaintiff was discharged from the hospital on November 5, 1964, following a successful operation which relieved him of the condition caused by the collision, it

is reasonable to assume he would have been able to return to work in a month and a half or two months, which would have been by January, 1965.

On this basis he would have missed approximately fifteen weeks and would have been entitled to lost wages for this period of time amounting to approximately $2,230.00.

This figure, plus medical expenses of $1,295.88 would amount to a total of approximately $3,525.00 as special damages incurred as a result of the accident.

Plaintiff-in-error's second primary argument for restoration of the remittitur is that his right to the full amount of the jury verdict should be determined on the basis that he now suffers from a thirty percent permanent partial disability because of which he is unable to follow the only occupation in which he has any skill, that of welding, (the evidence being that plaintiff-in-error is an expert welder and was employed at the time of his injury as a welder repairing barges), so that he has sustained a definite loss in earning capacity.

Response of defendants-in-error to this contention is threefold. They say first, that loss of earnings is in the nature of special damage which must be pleaded, and this was not done; second, that if they are mistaken about this, it is the law that Wilson's loss of earning capacity must be ascertained solely by reference to the fifteen percent disability for which they are responsible; and, finally, they say there is no evidence of loss of earning power.

In Caruthers History of a Lawsuit, Gilreath, 8th Ed., we find this succinct statement with respect to pleading damages:

"In the law of pleading, the most important classification of damages is the division into general damages and special damages. General damages are such as *naturally* and *necessarily* result from the wrong or injury complained of, while special damages are such as naturally *but not necessarily* result from the wrong or injury complained of. Therefore, before evidence of special damages is admissible it is necessary that such damages should be alleged in the pleadings. It is for this reason that in the foregoing declaration No. 48 (this is a reference to a form of declaration set out for study and use by a student or lawyer) the doctors bills, hospital expenses, the physical pain, suffering, etc. are alleged." Sec. 155.

In 22 Am.Jur.2d Damages, sec. 282, the question of the necessity of pleading specially decreased earning capacity is discussed as follows:

"*Loss of time and decreased earning capacity.* There is a difference of opinion as to the question of the necessity of alleging specifically the fact of lost time or loss of impairment of earning capacity in order to recover for such elements of damages. According to many courts, loss of time or decreased earning capacity may be shown pursuant to an allegation of the compensable injury and need not be specially alleged; the theory is that loss of time is a necessary and direct result of the injury described and constitutes damage which the law implies. That is to say, in many jurisdictions it is not essential to allege, specifically, loss of time or decreased earning capacity where the injuries alleged would necessarily or naturally result in a total or partial disability to work or would render a person less capable of attending to his business. Other

courts hold, however, that loss of time and loss or impairment of earning capacity do not necessarily and naturally result from any injury to the person, and hence are elements of damage which must be specially pleaded if recovery therefor is sought, although even if that is the rule, the objection that such losses were not pleaded is waived if evidence of such losses is admitted without objection. Under the practice in some jurisdictions, the plaintiff may be compelled to furnish a bill of particulars showing in detail how long he was prevented from attending to business and deprived of his earnings, giving the nature of the business and the amount of his income or, if employed, the amount of his salary.'' 22 Am.Jur.2d, Damages, sec. 282, pp. 378-379.

Wilson's declaration alleged his injuries in this language:

''Plaintiff avers that because of the collision aforesaid he was thrown into and against the various parts of the automobile and *seriously and permanently injured*, to wit: Strains and sprains of the back and especially of the lumbar area of the back; a lesion at the level of L-4, L-5; this caused a pinching of the nerves extending down the left leg to the left foot; bruises and contusions of the chest and arms. In order to care for these injuries it became necessary that a mylogram be performed and corrective disc surgery. As a result of these injuries the plaintiff suffered much pain and mental anguish; and was required to be hospitalized for a long period of time, to wear braces and undergo therapeutic treatment and to become liable for much doctor, hospital and medical expenses; to lose much

time from his employment and *to become permanently injured.*" (Emphasis ours.) Tr. pp. 4-5.

■ Since it would be reasonable to assume that one who has been seriously and permanently injured would necessarily and naturally suffer some loss of earning capacity, and, since under our practice a defendant may require a bill of particulars of a plaintiff (May v. Railroad, 129 Tenn. 521, 167 S.W. 477; Williams v. Chattanooga Iron Works, 131 Tenn. 683, 176 S.W. 1031; Helfenberger v. Harriman Northeastern RR Co. 156 Tenn. 14, 299 S.W. 793) and, in addition, may take his deposition under our new discovery statutes, T.C.A. 24-1201 et seq, we have concluded that plaintiff-in-error's declaration and the record are sufficient to permit us to consider any evidence bearing on loss of earning capacity.

■ Upon reflection, we are of opinion the defendants-in-error's second proposition that plaintiff-in-error's damages must be ascertained solely by reference to the fifteen percent disability caused by the last injury, and that no consideration can be given to the existing disability, is unsound, and is not the law. In Southern Coach Lines, Inc. v. Wilson, 31 Tenn.App. 240, 243, 214 S.W.2d 55, 56, it was held:

"Plaintiff had the right to recover compensation from defendant for all the harm its negligence caused her, including the harm to her earning capacity, whether permanent or temporary. One of the elements of her damages was her loss in her earning capacity, measured by the value of that part of it of which she was deprived." 31 Tenn.App. 243, 214 S.W.2d 55.

In 22 Am. Jur.2d Damages, sec. 122, it is said:

"In an action for damages for personal injuries caused by a wrongful act or omission, the injured person is entitled to recover full compensation for all damage proximately resulting from the defendant's act, even though his injuries may have been aggravated by reason of his pre-existing physical or mental condition.

* * * The defendant cannot invoke the previous condition of the person injured for the purpose of escaping the consequences of his own negligence or reducing the damages for which he is liable." 2 Am.Jur.2d Damages, sec. 122, pp. 173-174.

This rule has been adopted and followed in Tennessee. Meeks v. Yancey, 43 Tenn.App. 667, 311 S.W.2d 329; McCandless v. Sammons, 50 Tenn.App. 413, 362 S.W.2d 259; Elrod v. Franklin, 140 Tenn. 228, 204 S.W. 298; Cobb v. Waddell, 51 Tenn.App. 458, 369 S.W.2d 743, 2 A.L.R. 3rd, 457.

This being the law, it necessarily follows that if plaintiff's existing ten to fifteen percent disability did not prevent him from working, or reduce his earning capacity, but his earning capacity was reduced to a determinable extent by the injury negligently inflicted on him by defendants-in-error, then they would be liable in damages for the total loss of earning capacity resulting from their negligent act. To illustrate: Suppose a plaintiff with one eye or one arm was able to earn a hundred dollars a week at the only job in which he had any skill but, because the defendant negligently put out the good eye or cut off the remaining arm, the plaintiff could do nothing at all, and thereby lost earning capacity of $100.00 a week. Could anybody say, the law being as we have stated it above, that defendant would not be liable for

the full one hundred dollars per week loss? This question answers itself in favor of full recovery.

■ This brings us to the third response of defendants-in-error, that there is no competent evidence that plaintiff-in-error has actually suffered any material, substantial loss in earning capacity because of his disc injury and subsequent operation. And, upon consideration of the evidence we are constrained to agree with this insistence.

The surgeon who operated on plaintiff-in-error testified the operation was a complete success, and that plaintiff-in-error had sustained a normal and complete recovery. Wilson, himself, testified that the operation corrected his trouble, in that the pain he had been suffering in his legs, which was the only complaint he had, had gone away.

Plaintiff-in-error testified with respect to this matter as follows:

"Q. Now, then after, had you been able to work any since this accident?

A. No, sir, I haven't.

Q. Have you applied back to Serodino for work?

A. Yes, I have asked him about three times to let me go back to work.

Q. Have you applied otherwise for work?

A. No, I have been trying to get back with him." B. of E. p. 31.

"Q. You say you have applied for your job back?

A. Yes, sir, I have three times.

Q. Under the present circumstances if they were to put you back to work do you believe that you could stand up to it?

A. Yes, sir, I have got to try, because I have got to work.

Q. Do you think that you could stand up to it?

A. I don't believe I could.

Q. But would you try?

A. I would try." B. of E. p. 37.

"Q. Now, after you had your operation on your back, I believe that took care of the pain you had been suffering, and you haven't had any pain in the back of your legs since Dr. Donaldson operated?

A. No, sir, I haven't had any at all in my legs, but I was really, really what set me back was so far was this other took place and I was in bad condition right back again.

Q. After Dr. Donaldson operated on your back that corrected your pain in your back and legs didn't it?

A. Yes, sir, it corrected the pain in my legs, but I was feeling, you know, sore over that type of operation and I couldn't—

Q. Yes, but he did correct—you don't have pain in your back and legs any more?

A. No, sir, I don't have pain in my legs any more." B. of Ex. pp. 55-56.

So, the conclusion we have reached is that, although the state of the pleadings and the record is such in this

Court as to allow us to consider loss of earning capacity, and the law is that this loss of earning capacity is to be compensated for by a defendant to the extent his negligence caused it, even though there was a pre-existing disability, still, we would not be warranted in setting aside the trial judge's remittitur on the assumption there is a more rewardable loss of earning capacity due solely to the injury, there being no substantial, material evidence to the effect that the plaintiff-in-error could not have filled his old job with his company because of his back injury.

In conclusion, permit us to observe that plaintiff-in-error has recovered a judgment for $15,000.00. That the injury inflicted on him by defendants-in-error was not of a serious nature, and was corrected by a successful operation with full and complete recovery. And, since there is nothing except such questions as might arise from the testimony with respect to the percentum of residual disability, which we cannot answer from the record except by speculation, we find no reason, or justification, for over-riding the discretion of the trial judge in ordering a remittitur.

The assignment of error is overruled and the judgment of the Circuit Court is affirmed.

Shriver, and Puryear, JJ., concur.