LORETTA MILLER, Appellee, v. JAMES R. BERRY
and PATSY CREEK BERRY, Appellants.
—457 S.W.2d 859.

Eastern Section. May 11, 1970.

Certiorari Denied by Supreme Court September 8, 1970.

2

Campbell & Campbell, Chattanooga, for appellants.

Hargraves & Curtis, Chattanooga, for appellee.

4

PARROTT, J. From the action of circuit judge in entering judgment on a jury verdict in favor of Mrs. Loretta Miller in the amount of $7,750.00 for personal injuries and $500.00 for property damages, defendants have appealed insisting the circuit judge erred in overruling their motion for new trial.

The substance of the assigned errors is: (1) no evidence to support the verdict; (2) plaintiff was guilty of contributory negligence; (3) the court erred in its charge; and (4) the verdict was excessive.

Appellants' brief makes what we consider to be an accurate statement of the facts which we adopt:

"Mrs. Miller sued James R. Berry and Patsy Creek Berry, alleging that on August 1, 1968, when she was driving her 1967 Ford Mustang south on the access road leading to the parking area of Eastgate Shopping Center, Patsy Creek Berry suddenly and negligently drove from the parking area into said access roadway, crashing into Mrs. Miller and causing Mrs. Miller to sustain injuries to her neck. Mrs. Miller alleged that Patsy Creek Berry was negligent in not having her car under proper control, not keeping a proper lookout, driving faster than was reasonable, driving with inadequate or improperly adjusted brakes, and failing to steer to the right or left when she saw or should have seen that a collision was imminent.

"James R. Berry and Patsy Creek Berry filed a plea of not guilty and James R. Berry filed a cross-complaint against Loretta Miller for the property damage to his 1965 Mustang. Mr. Berry alleged that in the private shopping center in the city limits of Chattanooga, Eastgate

had many driveways, some running south from Brainerd Road while others ran east and west from each limit of the property, all of which Loretta Miller knew or should have known; that on August 1, 1968, Patsy Creek Berry was driving in a generally western direction, Loretta Miller in a generally southern direction; that Patsy Berry, when approaching the drive on which Loretta Miller was driving, stopped, looked in each direction, that there were no vehicles coming from the south headed north, and only one vehicle headed south that was near the intersection; that this was a stopped vehicle, and the driver motioned Patsy Creek Berry to cross, which she did; that Patsy Creek Berry had gotten completely across the two northbound lanes and over halfway across the two southbound lanes when struck by Loretta Miller. James Berry alleged that Loretta Miller was guilty of negligence in not keeping a proper lookout, not having her car under proper control, in not yielding the right-of-way to Patsy Berry when she saw or should have seen that Patsy Berry had entered and had crossed more than half of the intersection, in not applying her brakes properly or slowing her vehicle when she saw or should have seen that Patsy Berry had driven into the intersection, in driving with inadequate or improperly adjusted brakes, in not turning her car to one side when she saw or should have seen Patsy Berry's car.

"Eastgate is a shopping center in the city limits of Chattanooga. The drive on which Mrs. Miller was driving led from Brainerd Road into the shopping center and is four lanes wide, each lane being 17½ feet wide. There is a concrete divider separating the two lanes of traffic going into Eastgate (south) from the two lanes coming out to Brainerd Road (north). The concrete divider ex-

tends to a point 108 feet from Brainerd Road into the shopping center and at that point the access drive is intersected at approximately right angles by a two-laned drive running east and west. There are no traffic controls at the intersection of these drives. The area is practically level, the roadway straight. At the northwest corner of the intersection of the two drives is a branch bank of the Hamilton National Bank.

"Roy Steiner turned off of Brainerd Road into East-gate headed south in the extreme left lane and as he intended to make a left turn into the first intersecting drive, stopped at approximately the end of the concrete marker. In the drive on Steiner's left and headed toward him (west) was Mrs. Berry, in a stopped position. Steiner motioned to Mrs. Berry to cross in front of him. Mrs. Berry proceeded slowly across in response to his motion, crossed three of the four lanes, and was three or four feet into the fourth lane when Mrs. Berry was struck by Mrs. Miller, driving southward in the outside lane. Mrs. Berry testified she was driving two or three miles per hour and Steiner said Mrs. Berry was driving slowly.

"When Mrs. Berry came up to the drive entering East-gate from Brainerd Road and upon which drive Steiner was traveling, she stopped and looked both ways and saw only Mr. Steiner. After looking both ways and receiving Mr. Steiner's signal to cross, Mrs. Berry pulled out slowly at two to three miles per hour and at this speed crossed three of the four lanes and part of the fourth lane. Mrs. Berry saw Mrs. Miller's car after Mrs. Berry had cleared the front of Mr. Steiner's car and Mrs. Berry then turned as sharply to the left as possible and stopped when Mrs. Miller hit her.''

Under the proof above outlined, we think there was no error in refusing to direct a verdict either upon the ground that there was no evidence of negligence on the part of the defendant, Patsy Creek Berry, or upon the ground plaintiff was guilty of proximate contributory negligence as a matter of law so as to bar recovery.

As to the contention of no evidence of negligence on the part of Mrs. Berry, we think the jury could have concluded from the proof that if she had exercised reasonable care by keeping a proper lookout, she could have avoided a collision with plaintiff's automobile. Mrs. Berry states in her testimony that she never saw plaintiff's car until the front of her car had cleared the Steiner car which had stopped at the intersection. Also, we find no evidence that Mrs. Miller was traveling at an excessive speed or was guilty of any other acts so as to establish she was guilty of proximate contributory negligence.

The questions of negligence, contributory negligence as well as proximate cause, are primarily for the jury and become questions of law when there is no dispute in the evidence or only when one inference can be reasonably drawn from the evidence. City of Knoxville v. Cox, 103 Tenn. 368, 53 S.W. 734; Philip Carey Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 164 S.W. 1183.

Appellate review of the question of plaintiff's contributory negligence and the defendant's negligence are controlled by the rule as stated in D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897:

" 'While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury

8

cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati, N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S.W. 429; Finchem v. Oman, 18 Tenn.App. 40, 49, 50, 72 S.W.2d 564, 570.' ''

Appellant has assigned several errors directed to the court's charge. One of these assignments insists the court erred in failing to instruct the jury ''that the common law rules of the road apply, even though this accident occurred on private property and erred in failing to hold that the driver first in the intersection has the right of way.'' We do not see this as error and think the court properly instructed the jury that this case would be governed by the common law rules of ordinary care.

■ Ordinarily the term ''intersection'' means where two streets or roads cross each other or meet. Claiborne v. Solomon, 187 Tenn. 634, 216 S.W.2d 339; Vol. 22 Words and Phrases, p. 390.

■ The place where this accident happened is not an intersection as defined by law [T.C.A. 58-801]. Neither the statutory rules of the road nor the common law rules pertaining to intersections of public roadways are applicable.

■ Since where this accident happened cannot be classified or defined as an intersection but occurred on

private property, the duties and liabilities of the respective drivers must be governed by the basic principles of common law negligence requiring each person to exercise ordinary and reasonable care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. Glaser v. Dunlap, Ohio Mun. Ct., 83 N.E.2d 669, 52 Ohio Law Abst. 296; Zarzecki v. Hatch, 347 Mich. 138, 79 N.W.2d 605; Howard v. Hall, 112 Ga.App. 247, 145 S.E.2d 70; 62 A.L.R.2d 289.

Even though we say the statutory rules of the road are inapplicable, this does not mean the trier of fact, in determining what is ordinary care, cannot rely upon the widely recognized and established practices used in operating vehicles by reason of the common or statutory law. The statutory rules of the road merely set up minimum standards of care. Circumstances and conditions such as are found in crowded parking lots may require a driver to use an even greater degree of care.

"In general, the duty of a vehicle driver within a private parking lot seems to be defined by the ordinary rules of negligence, although statutory rules of the road, ordinarily held inapplicable, are sometimes relied upon, to some extent at least, as aids to defining the duty, especially in cases of intersectional collisions," says the annotator in 62 A.L.R.2d 288, in regard to the duty and liability of vehicle drivers within parking lots.

Another assignment insists the following portion of the charge was prejudicial to defendants:

"I charge you in substance the plaintiff's request Number 1, which is just a little bit of common sense. It is you have no right to excuse your negligence if you

were negligent because somebody else told you to do it. I mean that is—you just have to act as an ordinary prudent person would under the same or similar circumstances, under some instances you are required to obey what a police officer tells you but when it is a —another driver like you telling you what to do you look at that as an ordinary prudent person would act under the same or similar circumstances, and that in and of itself would not excuse you from your duty to keep a proper lookout for other traffic.''

█ Appellant, in support of this assignment of error, cites numerous cases including some from Tennessee where the courts have recognized that a motor vehicle operator has a right to rely upon signals given by another operator. We note that in most, if not all, of these cases the suits were against the person who gave the signal and not against a third person as in this case. Certainly a person who negligently gives a signal which causes harm or injury to another could be held liable for all reasonable foreseeable consequences. In our opinion the cases cited by appellant have no application or bearing on the instant case because with or without the signal Mrs. Berry was required to exercise reasonable care for the safety of others.

As heretofore said, the facts herein bear out the jury could have found Mrs. Berry breached her legal duty by voluntarily relying on Steiner's signal and proceeding without the exercise of reasonable care.

We find no merit in appellant's assignment of error contending there was no competent proof or that the trial judge improperly instructed the jury on the ques-

tion of aggravation of a preexisting condition of the plaintiff. The assignment is overruled.

■ The final assignment argues the verdict is excessive. The record shows the plaintiff was 34 years of age. According to the testimony of Dr. Augustus McCravey, an orthopedic specialist, plaintiff received a sprain to the cervical region. It was his opinion she did not suffer any major or permanent disability but would in the future have to restrict and limit her activities more than a person of her age. In other words, Dr. McCravey left the impression that if plaintiff did not make adjustments in her activities, she would suffer future pain from the injury.

As a result of the accident plaintiff has incurred medical bills in the amount of $990.75, lost 56 days from her work as a surgical nurse which totaled $1720.32 and $500.00 damages to her car, making a total loss of $3211.07.

She was hospitalized for two weeks where she remained in traction and was given physiotherapy treatments. Both before and after the confinement to the hospital, plaintiff took on an out-patient basis additional physiotherapy treatments. She was required to wear a "cervical collar" for a period of two months.

This court has often said that the amount of a verdict in personal injury cases is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the matter. Reeves v. Catignani, 157 Tenn. 173, 7 S.W.2d 38. And where the trial judge has ruled upon the issue of excessiveness, whether his ruling

results in the suggestion of a remittitur, his ruling will not be disturbed on appeal unless an abuse of discretion is shown. Stark v. Yost, 47 Tenn.App. 28, 334 S.W.2d 954; Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6; Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848.

Applying these principles, we cannot say the judgment and verdict in this case are excessive.

For the foregoing reasons, all assignments of error are overruled, the judgment affirmed with costs taxed to appellants.

McAmis, P. J., and Cooper, J., concur.