**Gayle E. FOSTER, Plaintiff-Appellant,**

v.

**AMCON INTERNATIONAL, INC., Defendant-Appellee.**

Supreme Court of Tennessee.

Sept. 8, 1981.

Joel Porter, Burch, Porter & Johnson, Memphis, for plaintiff-appellant.

Lee A. Hardison & David M. Cook, Hardison, McCarroll, Cook & Cannon, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

We granted plaintiff's application for permission to appeal in order to determine whether the actions of the trial court in granting an additur, and the Court of Appeals in reinstating the jury verdict, were proper. The jury returned a verdict for the plaintiff in the amount of $500.00. The trial judge on plaintiff's "Motion for a New Trial or an Additur" increased the jury verdict to $15,000.00. The Court of Appeals reversed the judgment of the trial judge and restored the judgment of the jury.

Plaintiff contends that she sustained injuries and damages as a result of a severe electric shock while cooking on her stove at her apartment, which was furnished and maintained by the defendant. Defendant contends that it was not guilty of any negligence and that plaintiff sustained no damages.

There was a serious dispute and a substantial conflict in the evidence with regard to the negligence of the defendant with respect to its maintenance of the stove; however, liability is not an issue on this appeal. The sole issue concerns damages. On the issue of plaintiff's pre- and post-accident mental condition and the presence or absence of a claimed traumatic neurosis, the opinions of plaintiff's and defendant's psychiatrists were conflicting. It is apparent that the trial judge and the jury did not agree as to the credibility of the witnesses in their assessment of plaintiff's damages.

We must first determine whether the actions of the trial judge were proper in suggesting a substantial additur. We have never before been called upon to approve an additur some thirty (30) times that of the jury's verdict. The trial judge in commenting on the jury's verdict at the hearing on the motion for a new trial stated that under the proof the jury found liability on the part of the defendant and that it was his feeling that the lower limits for a verdict in this case would be $15,000.00. In overruling defendant's motion to reconsider the suggested additur, the trial judge stated, "under the proof the verdict is grossly below the lower limits of reasonableness."

The additur statute, T.C.A. § 20–10–101,[1] states that in cases where, in the opinion of the trial judge, a jury verdict is not adequate to compensate the plaintiff, the trial judge may suggest an additur. The statute sets out no guidelines for the trial judge to follow in granting an additur. It further states that if the Court of Appeals is of the opinion that the verdict of the jury should not have been increased or that the amount of the additur is improper, the Court of Appeals may order remitted all or any part of the additur. The statute imposes no standard of review upon the appellate courts.

As stated in *Smith v. Shelton*, 569 S.W.2d 421, 426 (Tenn.1978), "[f]inding no express statutory language and no legislative intent or purpose to impose a standard of review upon the appellate courts, it follows that the issue is controlled entirely by case law."[2]

Our appellate courts have consistently held that the amount of compensation in a personal injury case is primarily for the jury, and that next to the jury, the most competent person to pass on the matter is the trial judge who presided at the trial and

1. 20–10–101. *Inadequate verdict—Suggestion of additur—Granting new trial—Appeal.* —(a)(1) In cases where, in the opinion of the trial judge, a jury verdict is not adequate to compensate the plaintiff or plaintiffs in compensatory damages or punitive damages, the trial judge may suggest an additur in such amounts as he deems proper to the compensatory or punitive damages awarded by the jury, or both such classes of damages.... (b)(2) If the Court of Appeals is of the opinion that the verdict of the jury should not have been increased or that the amount of the additur is improper, but that the judgment of the trial court is correct in all other respects, the case shall be reversed to that extent, and the Court of Appeals may order remitted all or any part of the additur.

2. Cases dealing with remittitur are cited in this opinion as well as those dealing with additur for they are indistinguishable when analyzing the scope of appellate review.

heard the evidence.[3] The reason for the rule was well stated in *Cumberland Tel. & Tel. Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (1903):

> . . . the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; . . . by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; . . . in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside. . . . It would be, say the authorities, a hazardous thing for this court to attempt to review at large the testimony of witnesses whose evidence was given orally in the court below, and to reverse the action of a judge and jury thereon, who had seen the witnesses, and had had the opportunity of observing their demeanor and manner of testifying. But this view is based not only upon the supposition that the jury had considered and passed upon the facts; but also that the parties have had the

benefit of the trained intelligence of the circuit judge as well.

So, under our system of jury trials, the parties have the benefit, in the first instance, of the deliberations of the jury upon the facts, guided as to the law by the instruction of a trial judge learned in the law; next, on a motion for a new trial, or *mero motu*, the benefit of the deliberations of the circuit judge himself, upon the whole case, in determining whether the verdict of the jury shall stand; . . . .

112 Tenn. at 468–70, 79 S.W. 803.

It has thus been well established that a verdict of a jury is subject to the supervision of the trial court. The power of a trial judge to disturb a verdict because of his dissatisfaction with the amount of damages rests in this state on more than a century of precedent and practice.

Over fifty-five years ago in response to a request by counsel for plaintiffs to restore $3,500.00 remitted at the suggestion of the trial court, Justice McKinney stated "[t]his is only done where it appears that the trial court has abused his discretion, which is not the case here." *Pryor Brown Transfer Co. v. Gibson*, 154 Tenn. 260, 272, 290 S.W. 33 (1926). Since that time the scope of appellate review, where a remittitur or additur has been used, traditionally has been limited to the inquiry whether the trial judge "abused his discretion." [4]

**3.** *Smith v. Shelton*, 569 S.W.2d 421 (Tenn. 1978); *Transport, Inc. v. Perry*, 220 Tenn. 57, 414 S.W.2d 1 (1967); *Shuey v. Frierson*, 197 Tenn. 235, 270 S.W.2d 883 (1954); *Reeves v. Catignani*, 157 Tenn. 173, 7 S.W.2d 38 (1928); *Ferrill v. Southern Ry. Co.*, 493 S.W.2d 90 (Tenn. App. 1972); *Holt v. McCann*, 58 Tenn. App. 248, 429 S.W.2d 441 (1968); *Clinchfield R. Co. v. Forbes*, 57 Tenn.App. 174, 417 S.W.2d 210 (1966); *Lyons v. Wagers*, 55 Tenn.App. 667, 404 S.W.2d 270 (1966); *French v. Fischer*, 50 Tenn.App. 587, 362 S.W.2d 926 (1962); *Yellow Cab Co. of Nashville v. Pewitt*, 44 Tenn. App. 572, 316 S.W.2d 17 (1958).

**4.** *P. & B. Storage & Transfer Co., Inc. v. Lane*, 11 Tenn.App. 237, 248 (1930); *City of Lawrenceburg v. Dyer*, 11 Tenn.App. 493, 508 (1930); *Town of Clinton v. Davis*, 27 Tenn.App. 29, 42, 177 S.W.2d 848, 853 (1944); *Atlantic Coast Line R. R. v. Meeks*, 30 Tenn.App. 520, 537, 208 S.W.2d 355 (1947); *Yellow Bus Line v. Brenner*, 31 Tenn.App. 209, 230, 213 S.W.2d 626 (1948); *International Harvester Co., et al. v. Sartain*, 32 Tenn.App. 425, 466, 222 S.W.2d 854 (1949); *Olson v. Sharpe*, 36 Tenn.App. 557, 259 S.W.2d 867 (1953); *Monday v. Millsaps*, 37 Tenn.App. 371, 412, 264 S.W.2d 6 (1953); *Spence v. Carne*, 40 Tenn.App. 580, 619, 292 S.W.2d 438 (1954); *Graham v. Smith*, 46 Tenn. App. 549, 555, 330 S.W.2d 573 (1959); *Stark v. Yost*, 47 Tenn.App. 28, 38, 40, 334 S.W.2d 954 (1960); *Templeton v. Quarles*, 52 Tenn.App. 419, 433, 374 S.W.2d 654 (1964); *Dixie Feed & Seed Co. v. Byrd*, 52 Tenn.App. 619, 638, 376 S.W.2d 745 (1964); *Henson v. Powers*, 53 Tenn. App. 504, 510, 384 S.W.2d 452 (1964); *Wilson v. Cook Mfg. Co.*, 56 Tenn.App. 129, 132, 405 S.W.2d 584 (1966); *Clinchfield R. Co. v. Forbes*, 57 Tenn.App. 174, 190, 417 S.W.2d 210

In 1973, however, the Middle Section of the Court of Appeals for the first time purported to adopt a different standard— the de novo standard of review. *Speight v. Newport*, 503 S.W.2d 202 (Tenn. App. 1973). For the next four years that court at times used the abuse of discretion standard, and at times the de novo standard.[5] On August 26, 1977, a majority of that court in *Smith v. Shelton* used the de novo standard of review, and in a concurring opinion a member of that court expressed the hope that the Supreme Court would resolve the four year old conflict as to which standard was proper abuse of discretion or de novo review. This Court granted certiorari to specifically address that question. *Smith v. Shelton*, 569 S.W.2d 421 (Tenn.1978).

In *Smith v. Shelton*, this Court expressed its dissatisfaction with both standards of review. It overruled the de novo review standard of *Speight v. Newport, supra*, holding that additur and remittitur cases do not fit the mold of nonjury cases. 569 S.W.2d at 424, 427. Without specifically overruling a half century of case law in support of the abuse of discretion standard,[6] the Court did point out the weakness of this standard in providing proper guidelines for appellate review of additurs and remittiturs.

■ The chief difficulty with "abuse of discretion," as the Court in *Smith v. Shelton* noted, is that it has meant different things to different courts. Appellate courts have used "abuse of discretion" interchangeably with "shocking the judicial conscience." *See: Jones v. Cocke County*, 61 Tenn.App. 555, 563, 565–67, 456 S.W.2d 665 (1970); *Graham v. Smith*, 46 Tenn.App. 549, 555, 330 S.W.2d 573 (1959); *Yellow Cab Co. v. Pewitt*, 44 Tenn.App. 572, 316 S.W.2d 17 (1958). The term has too often implied intentional wrong, bad faith or misconduct on the part of a trial judge. In our view,

"abuse of discretion" was never intended to carry such a meaning, nor to reflect upon the trial judge in any disparaging manner. To us the phrase simply meant an erroneous conclusion or judgment on the part of the trial judge—a conclusion that was clearly against logic (or reason) and not justified. Given the confusion surrounding the term "abuse of discretion," we feel the better course of action is to abandon it as unworkable in the additur-remittitur context. Henceforth the standard of appellate review will be simply to ascertain whether the trial judge's actions in increasing or decreasing a verdict were justified, giving due credit to the jury's decision on the credibility of the witnesses and that of the trial judge in his capacity as thirteenth juror.

Our adoption of this new standard is guided by the intentions of *Smith v. Shelton*. *Shelton* was written with a view to providing the appellate courts with guidelines, rather than hard and fast rules in reviewing additurs and remittiturs. The wisdom of this approach is readily apparent when one considers the numerous types of cases and fact situations to which additurs and remittiturs apply.

This Court in *Smith v. Shelton* established guidelines which it hoped would simplify the process for trial or appellate judges in considering additurs and remittiturs. These guidelines have now been amplified and explained in subsequent cases. *Shelton* tells the appellate courts that "appellate review of a trial judge's actions in making use of remittitur or additur resolves into a determination of whether or not the jury verdict is within the range of reasonableness established by the credible proof. The upper and lower limits of that range just be determined by a reasoned examination of the credible proof of damages and all factors that have bearing upon the

---

(1966); *Jones v. Cocke County*, 61 Tenn.App. 555, 456 S.W.2d 665 (1970); *Miller v. Berry*, 62 Tenn.App. 1, 12, 457 S.W.2d 859 (1970); *Kaiser v. Cannon*, 529 S.W.2d 235, 242 (Tenn. App. 1975); see also 5A C.J.S. Appeal & Error, § 1626 (1958).

5. See *Waddell v. Lockhart*, July 25, 1975; *Lee v. Cunningham*, August 29, 1975; *Sterzer v. Bentley*, March 26, 1976; and *Raines v. Bennett*, August 6, 1976.

6. See footnote 4.

amount of recovery." 569 S.W.2d at 427. *Shelton* tells the trial judge that he is without authority to reduce or increase jury verdicts that are between the upper and lower limits of the range of reasonableness established by the credible proof.

■ In *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn.1980), it was pointed out that if the issue is additur, *Shelton* requires a determination of only the lower limit. The expression "range of reasonableness" was used because it embraces both the upper and lower limits, but in any given case the issue is either excessiveness or inadequacy, never both. A reasoned examination of the credible proof of damages leads to a determination of the figure beyond which excessiveness or inadequacy lies and beyond which there is no evidence, upon any reasonable view of the case, to support the verdict. 603 S.W.2d at 126, 127.

*Ellis* also tells us that "when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award. But when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed." 603 S.W.2d at 129; *accord, Poole v. Kroger Co.*, 604 S.W.2d 52 (Tenn.1980).

Another *Shelton* guideline tells us that "[t]he credibility of expert and lay witnesses and the probative value to be given their respective testimony is, of course, involved in determining the range of reasonableness. Appellate review should involve a determination of whether the jury's verdict or the trial judge's use of a remittitur or additur has established or rejected the credibility of any witness. The amounts awarded by the jury and the trial judge may also indicate the probative value given to the testimony of the witnesses. Throughout the review, the jury's determination should be given primary weight and the trial judge's secondary weight." 569 S.W.2d at 427.

In *State ex rel. Pack v. Castle*, 604 S.W.2d 50 (Tenn.1980), this Court applied this guideline. The State's two experts in this eminent domain proceeding, testified that Castle sustained no incidental damages in excess of incidental benefits. Castle's expert placed the incidental damages at $5,000.00. Castle himself testified that he suffered $9,000.00 in incidental damages. The jury's verdict of $8,000.00 indicated that it gave some probative weight to Castle's testimony. The trial judge, in remitting the verdict to $5,000.00, rejected Castle's credibility. The Court of Appeals reinstated the jury verdict, finding that the $8,000.00 jury verdict as well as the $5,000.00 award after remittitur by the trial judge were within the range of reasonableness. This Court pointed out that the jury gave some probative weight to Castle's testimony, while the trial judge by use of a remittitur totally disregarded the same. This Court held that Castle's testimony was entitled to no probative value whatsoever, and that the upper range of reasonableness was the $5,000.00 figure. We therefore affirmed the remittitur of the trial judge.

In *Magness v. B. Hitt Elec. Co., Inc.*, 604 S.W.2d 44 (Tenn.1980), the jury awarded plaintiff $162,600.00 and the trial judge remitted the award to $100,000.00. The Court of Appeals found the jury's verdict outside the range of reasonableness established by the credible proof but was unable to determine a range of reasonableness and remanded the case for a new trial. This Court concluded that the verdict of the jury, as remitted by the trial judge, was within the upper limit of the "range of reasonableness" and affirmed the judgment of the trial court.

In *Magness*, Justice Cooper recognized the difficulties the trial and appellate courts were having in applying the guidelines of *Smith v. Shelton* when he stated, "[t]his is one of several cases where the application for permission to appeal has been granted to consider the issue of damages *only*. In each instance, the review has resulted from a misunderstanding by the trial court or the Court of Appeals of the

holding of this court in *Smith v. Shelton.*" [7] In our opinion, part of these difficulties stem from the inflexible application of the range of reasonableness test (inflexible in that, if the verdict is within the range of reasonableness, the trial judge may not alter it). In *Shelton* the range of reasonableness test was formulated with the following guideline in mind:

> The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.

569 S.W.2d at 427, *citing Reeves v. Catignani,* 157 Tenn. 173, 176, 7 S.W.2d 38, 39 (1928). In considering additurs and remittiturs, other guidelines or factors must be given some, if less, consideration.

In a leading and oft cited case on the constitutionality of the additur statutes, the Supreme Court of Minnesota made the following observations about the purpose of additur:

> The practice of using additur is in the interest of the sound administration of justice . . . This practice avoids the necessity of a new trial with its accompanying expense and delay.

*Genzel v. Halvorson,* 248 Minn. 527, 80 N.W.2d 854, 859 (1957). *See, also, Jehl v. Southern Pacific Co.,* 66 Cal.2d 821, 59 Cal. Rptr. 276, 427 P.2d 988, 995 (1967). It need hardly be added that the concern for efficient judicial administration is even more pressing now than when *Genzel* was decided in 1957.

■ Our additur statute gives the trial judge the authority to suggest an additur when in his opinion the verdict is not adequate. *Shelton* appears to have restricted the authority of the trial judge to suggest an additur when the jury verdict is within the range of reasonableness of the credible proof. However, such an interpretation

would contradict the clear language and intent of the statute. The practice of using additur and remittitur is in the interest of the sound administration of justice. The practice avoids the necessity of a new trial with its accompanying expenses and delay. *Genzel v. Halvorson, supra,* and *Jehl v. Southern Pacific Co., supra.*

■ We therefore modify *Shelton* to the extent that trial judges may suggest adjustments when the jury verdict is within the range of reasonableness, as an alternative to the practice of granting a new trial, if they are *of the opinion that the jury verdict is not adequate.* T.C.A. § 20–10–101. *See also,* T.C.A. § 20–10–102. In so holding, we do not intend to in any way alter our position that in personal injury cases the amount of compensation is primarily for the jury, and next to the jury, the most competent person to pass on the matter is the trial judge.[8]

In this case the proof in the record relating to damages came primarily from plaintiff and the depositions of Dr. Adler and Dr. Linder, plaintiff's and defendant's expert witnesses. Plaintiff insisted that she sustained traumatic neurosis as a result of an electric shock due to the malfunction of the stove in her apartment, which was furnished by the defendant. She saw Dr. Kuykendall, a general practitioner, the day following the accident and he sent her home prescribing no medication. She next saw Dr. Clarke, a neurosurgeon on four occasions. He found no physical problems, but gave her some muscle relaxers.

Three weeks following her accident plaintiff was seen by Dr. Adler, a psychiatrist. Dr. Adler had seen plaintiff on twenty-seven occasions since the accident at the time his deposition was taken. Dr. Adler diagnosed plaintiff's condition as severe psychoneurosis in the form of a traumatic neuro-

---

7. Justice Cooper's statement is reinforced by the fact that in the brief time since *Smith v. Shelton,* the Court of Appeals has been reversed six times: *Jenkins v. Commodore Corp. Southern,* 584 S.W.2d 773 (Tenn.1979); *Pitts v. Exxon Corp.,* 596 S.W.2d 830 (Tenn.1980); *Ellis v. White Freightliner Corp.,* 603 S.W.2d 125

(Tenn.1980); *Magness v. B. Hitt Elec. Co., Inc.,* 604 S.W.2d 44 (Tenn.1980); *State ex rel. Pack v. Castle,* 604 S.W.2d 50 (Tenn.1980); *Poole v. Kroger Co.,* 604 S.W.2d 52 (Tenn.1980).

8. See footnote 3.

sis. He related this condition to the accident. He testified that she was disabled as a result of the accident for a period of two and one half years. His fee for the treatment was $1,205.00 and he estimated the cost of additional therapy to be approximately $600.00.

Dr. Linder, a psychiatrist, saw plaintiff, at the request of defendant, for an independent psychiatric evaluation. He suggested that plaintiff "simply had a continuation of her emotional problem that she had been having for some time." He also stated that he did not consider plaintiff a reliable informant as to her psychiatric condition prior to the accident. As pointed out by the Court of Appeals, the conflicting psychological theories tendered by the parties in explanation of the condition of plaintiff made particularly relevant her emotional stability and emphasized the importance of her credibility as a witness in her own behalf. The defendant attacked plaintiff's credibility several times during the course of the trial, and this became an issue.

Dr. Adler and Dr. Linder, both qualified experts in their field, offered conflicting professional opinions and the jury and the trial judge obviously disagreed on the probative value to be given their testimony. The jury and trial judge also disagreed as to the credibility of plaintiff in assessing her damages. In reinstating the jury award of $500.00 the Court of Appeals stated:

> We find material evidence in the record to support a finding by the jury that injuries to plaintiff resulting from the stove incident were minimal requiring no further medical treatment beyond that rendered by Dr. Kuykendall, a general

practitioner, and Dr. Clarke, a neurosurgeon, and that the disabling mental and emotional problems of plaintiff resulted from factors in her life other than the stove incident. Upon such a finding damages of $500.00 are within the range of reasonableness.

■ Our review of the evidence supports the Court of Appeals' conclusion that the jury verdict of $500.00 is within the range of reasonableness of the credible proof, although it is admittedly low. Under our holding today the trial judge was justified in suggesting an additur, even though the jury verdict was within the range of reasonableness, because he was of the opinion that the jury verdict was not adequate. The additur, suggested in this case however, bears absolutely no relation to the jury's verdict. Additurs and remittiturs were designed to correct the excessiveness or inadequacy of a jury's verdict as an alternative to the granting of a new trial. To suggest an additur thirty times that of the jury's verdict, in our mind totally destroys the jury's verdict.[9] We find the action of the trial judge in suggesting such a substantial additur to be unjustified, improper and erroneous.

The record clearly reveals the trial judge's dissatisfaction with the jury's verdict when he stated that "under the proof the verdict is grossly below the lower limits of reasonableness." It is obvious that in his role as thirteenth juror he would not have accepted a $500.00 verdict, but would have awarded plaintiff a new trial. We therefore reverse the judgment of the Court of Appeals in reinstating the jury verdict and remand this cause for a new trial. The

9. The largest percentage of increase approved by an appellate court to date is an increase of 3.6 times the jury's verdict, *Kaiser v. Cannon*, 529 S.W.2d 235 (Tenn.App.1975), $2,500.00 increased to $9,000.00. The largest reported decreases are as follows: *Pryor Brown Transfer Co. v. Gibson*, 154 Tenn. 260, 290 S.W. 33 (1926), $5,000.00 remitted to $1,500.00; *Management Services v. Hellman*, 40 Tenn.App. 127, 289 S.W.2d 711 (1955), $35,000.00 remitted to $20,000.00; *Wilson v. Cook Mfg. Co.*, 56 Tenn.App. 129, 405 S.W.2d 584 (1966), $47,-500.00 remitted to $15,000.00; *Jenkins v. Commodore Corp. Southern*, 584 S.W.2d 773 (Tenn. 1979), $250,000.00 remitted to $150,000.00; *Magness v. B. Hitt Elec. Co., Inc.*, 604 S.W.2d 44 (Tenn.1980), $162,600.00 remitted to $100,-000.00. The majority of additurs and remittiturs found in the reported cases are less than one times the jury's verdict. The above cited cases are used only for illustration; by their use we do not intend to establish a numerical standard for reviewing additurs and remittiturs.

costs of this appeal will be taxed to the appellee.

Reversed and remanded for new trial.

HARBISON, C. J., COOPER and BROCK, JJ., and DYER, Special Judge, concur.